# Richmond

## MATA L. MOORE v. RODERIC W. LEWIS.

January 18, 1960.

Record No. 5020.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and I'Anson, JJ.

The opinion states the case.

*H. Lee Kanter* and *Jack Rephan* (*Kanter & Kanter*, on brief), for the plaintiff in error.

*E. Pryor Wormington* (*Rixey & Rixey*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Mata L. Moore, while riding as a passenger in a car driven by her husband, Charles F. Moore, was injured when that car collided with another owned by Carl L. Lewis and driven by Roderic W. Lewis, at the intersection of Tidewater Drive and Shoop Avenue in the city of Norfolk. In an action at law filed by Mrs. Moore against both Lewises, the trial court struck the evidence as to Carl L. Lewis and entered a summary judgment in his favor and that ruling is not questioned on this appeal. The case went to the jury as to the other defendant, Roderic W. Lewis, and resulted in a verdict and judgment in his favor which are here under review.

In her assignments of error the appellant, the plaintiff below, contends that the trial court erred in excluding certain evidence offered by her which, she says, tended to show that just before the collision the Lewis car was operated at an excessive rate of speed, and in its rulings on certain instructions. For convenience the parties will be referred to as they appeared in the trial court.

It is undisputed that the collision occurred on August 17, 1957, at about 6:30 p. m., during daylight, when the pavement was dry. Tidewater Drive is an arterial street, running north and south, with two lanes of travel in each direction, marked by the usual white lines. Shoop Avenue, running east and west, forms a "T" intersection with Tidewater Drive which it enters from the east. The only traffic control was a stop sign for vehicles entering the intersection on Shoop Avenue. The speed limit at the intersection was 30 miles per hour.

It is further undisputed that just before the collision the Lewis car was being driven northwardly along Tidewater Drive in the left-hand northbound lane. The Moore car was being driven westwardly along Shoop Avenue for the purpose of making a left-hand turn at the intersection and going south on Tidewater Drive. When the front wheels of the Moore car were crossing the center line of Tidewater

Drive that car was struck near the left front door by the front of the Lewis car, doing considerable damage to both vehicles and injuring Mrs. Moore. There were skid marks on the pavement from the tires of the Lewis car running back a distance of 34 feet from the point of the impact. The force of the impact pushed the Moore car "sideways" about five feet. Moore died between the time of the accident and the trial and we do not have his account of how the accident occurred.

There is a conflict in the evidence as to what occurred just before the collision. The plaintiff testified that as her husband approached the intersection he brought his car to a full stop and waited for two vehicles headed northwardly on Tidewater Drive to pass, and then proceeded "very slowly" into the intersection. She further said that when she first saw the on-coming Lewis car it was about 300 feet from the intersection, at which time she was unable to judge its speed. She next saw that car when it was about 50 feet from her car and approaching at a speed which she estimated to be between 40 and 50 miles per hour. Her estimate of the speed of the Lewis car was excluded from the jury, and that ruling is one of her principal assignments of error. The plaintiff further testified that just before the collision the eastern or right-hand northbound lane on Tidewater Drive was free of traffic, and that the defendant could have avoided the collision by turning into that lane and passing around the rear of the Moore car.

Lewis, the defendant, testified that he approached the intersection driving in the left-hand northbound lane at from 25 to 30 miles per hour; that when he was about three car lengths from the intersection he saw the Moore car come into the intersection making a left turn. He further said that he did not "see" the Moore car stop before entering the intersection. But W. S. Henderson, an eyewitness, testified that the Moore car did not stop at the intersection and entered it when the Lewis car was about "30 feet" away. Henderson estimated the speed of the Lewis car just before the collision at 30 miles an hour.

The principal assignment of error is that the trial court erred in excluding from the jury the plaintiff's estimate that just before the collision the Lewis car was approaching at a speed of from 40 to 50 miles per hour. As has been said, the plaintiff testified that when she first saw the Lewis car it was about half a block or 300 feet from Shoop Avenue, at which time she was unable to estimate its speed; that she saw it "the second time" when it was about 50 feet away from

her car and "looked like he was coming fast." When asked, "How fast was he going?" her reply was, "I would judge 40 to 50 miles an hour." She was then asked, "How long have you been driving in automobiles in Norfolk?" and her reply was, "I don't drive; I am learning. But I have been riding a long time."

On objection by counsel for the defendant her testimony was excluded on the ground that since the witness did not drive a car she was not qualified or competent to testify as to the speed of the Lewis car.

We do not agree with this ruling. The generally recognized rule is thus stated in 5A Am. Jur., Automobiles, § 994, pp. 873, 874: "An estimate of the speed at which an automobile was moving at a given time is generally viewed as a matter of common observation rather than expert opinion, and it is accordingly well settled that any person of ordinary experience, ability, and intelligence having the means or opportunity of observation, whether an expert or nonexpert, and without proof of further qualification may express an opinion as to how fast an automobile which came under his observation was going at a particular time. The fact that the witness had not owned or operated an automobile does not preclude him from so testifying. Speed of an automobile is not a matter of exclusive knowledge or skill, but anyone with a knowledge of time and distance is a competent witness to give an estimate; the opportunity and extent of observation goes to the weight of the testimony." See also, Jones Commentaries on Evidence, 2d Ed., Rev., Vol. 3, § 1264, pp. 2329, 2330; 32 C. J. S., Evidence, § 499-c, p. 157 ff.

■ In order to be competent to testify on the subject the witness must have had a reasonable opportunity to judge the speed of the automobile. While there is some conflict on the subject it is generally held that where the witness has only a brief opportunity or interval of time to observe the speed of the vehicle, that fact affects only the weight of his testimony and not its competency. 20 Am. Jur., Evidence, § 805, 1959 Cum. Supp., p. 125.

Accordingly, in *Burton* v. *Oldfield*, 194 Va. 43, 48, 72 S. E. 2d 357, 361, we held that a witness's estimate of the speed of an approaching car made when it was about 90 feet away from him was admissible for such weight as the jury thought it should have.

With the admission of this testimony of the plaintiff as to the speed of the Lewis car, and the other physical facts and circumstances, it was for the jury to say whether that car was being driven at an exces-

sive rate of speed and, if so, whether that was a proximate cause of the collision.

Complaint is made of the refusal of the trial court to grant Instruction P-5a which read thus: "The court instructs the jury that if you believe from a preponderance of all of the evidence in this case that the defendant, Roderic W. Lewis, could have, in the exercise of reasonable care, avoided striking the vehicle of the late Mr. Moore by going around it, and negligently failed to do so, and that such failure either caused or contributed to the collision, then you should find your verdict for the plaintiff."

This instruction was properly refused. It was a finding instruction based upon a partial view of the evidence, the testimony of the plaintiff that the right-hand northbound lane was free of traffic and that by using it the defendant could have avoided the collision, passing around the rear of the Moore car. Yet it omitted other pertinent factors, such as whether the Moore car had cleared that lane and, if so, whether the defendant had sufficient time and distance within which, by the exercise of ordinary care, he could have observed the conditions, executed the maneuver, and avoided the collision.

The next assignment of error, which may be material on a new trial, relates to the action of the trial court in excluding from the consideration of the jury what the plaintiff says were certain elements of her damages. The court instructed the jury in the usual way that in assessing the damages, if any, which they might award the plaintiff they should take into consideration the amounts paid by her for medical and physiotherapeutic treatments, medicine and drugs, and her past and future physical pain and mental suffering. It eliminated from the instruction these additional items requested by the plaintiff:

"3. Loss of earnings, both past and future, sustained by the plaintiff as a result of said injury, if any;

"4. Loss of time sustained by the plaintiff, including deprivation from carrying on her normal activities as a result of said injury, if any."

Obviously, the third item was eliminated for lack of sustaining proof. The plaintiff was not confined to the hospital or to her home as a result of her injuries and claimed no loss of earnings in that respect. But she sought reimbursement for the time lost from her work in securing medical and physiotherapeutic treatments which she estimated at 159 hours. For this, she says, she should be compensated at her hourly wage of $1.00. But the trouble about this contention is

that in the present record there is no proof that she actually lost any wages as a result of these treatments. She testified that if she would procure from her physician a certificate that her absence from work was necessary because of these treatments, her employer would make no deduction from her wages. She further testified that she had made no effort to procure such a certificate, and thus it was not determined that she had lost, or will lose, any earnings while taking such treatments.

Similarly, the fourth item was properly eliminated for lack of sufficient proof. There is no evidence of the plaintiff's "loss of time" or "deprivation from carrying on her normal activities." Such inconvenience as the plaintiff may have suffered as a result of her injuries was compensable as a form of her mental suffering (25 C. J. S., Damages, § 70-c, p. 559) which, under the language of the instruction, the jury were permitted to consider.

For the error of the trial court in rejecting the testimony of the plaintiff as to the estimated speed of the defendant's car, the judgment appealed from is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*