**Lawrence G. COLWELL, Appellant**
**(Plaintiff below),**

**v.**

**Gregg ANDERSON, Appellee**
**(Defendant below).**

**No. 3606.**

Supreme Court of Wyoming.

March 8, 1968.

Arthur Kline, of Kline & Tilker, Cheyenne, for appellant.

A. Joseph Williams, of Guy, Phelan, Williams, White & Mulvaney, Cheyenne, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Mr. Chief Justice HARNSBERGER delivered the opinion of the court.

In this action plaintiff below sought recovery of damages from defendant for injury to his automobile, medical expenses, and personal injury, alleging the negligence of defendant caused a collision between plaintiff's and defendant's vehicles. Defendant denied the allegations of his negligence and pleaded contributory negligence of plaintiff. After trial to the jury, a verdict was returned in favor of defendant, in consequence of which the court gave judgment for defendant.

As grounds for appeal, plaintiff claims the trial court erred, (1) in refusing to permit a witness to testify as to defendant's speed, (2) in giving an instruction defining the words "immediate hazard," and (3) in refusing to give plaintiff's offered instruction as to "an appropriate reduced speed when approaching an intersection."

Exhibit A, drawn to scale, shows the lane for west to east travel upon which defendant was driving to be 43 feet in width. Adjoining that lane to the north was a median strip 25 feet in width, and the east to west travel lane north of the median strip was 30 feet. This made the total width of the highway to be about 98 feet. A stop sign was placed at the northwest corner where the through highway was intersected by the north-south road upon which plaintiff was proceeding south.

The undisputed evidence was that a posted sign fixed the speed limit on the through highway in the accident area at 50 miles per hour.

Defendant testified that when he was about 300 or 400 feet from the intersection he saw plaintiff in the median strip "appearing to be preparing to stop, yield right-of-way," and "Next thing I realized he was pulling out in front of me and I applied my brakes and turned my wheels to the right as I stopped trying to avoid him and we collided"; that he, the defendant, was 60 to 80 feet from the intersection when he applied his brakes; and that he was going "between sixty and sixty-five."

A witness for defendant said that when he was about 568 feet from point where accident occurred, he saw plaintiff's car parked at the stop sign; then he saw plaintiff's car about the center of the lane upon which defendant was driving east; and defendant was reducing his speed at the time of the accident.

Plaintiff said that after stopping at the stop sign he was moving 10 miles per hour and that when he entered defendant's west to east traffic lane he saw defendant's car some 300 to 400 feet distant, and that it was traveling at a high rate of speed, in the neighborhood of 70 miles per hour. Assuming this was true, defendant's car would have reached the point of impact within three or four seconds. Had plaintiff proceeded across defendant's 43-foot west to east lane as slowly as the 10 miles per hour he testified, he would have passed the point of collision in less than three seconds and would have been well beyond it in four seconds. But plaintiff testified he "accelerated" his speed to 20 miles per hour and was going 20 miles per hour when the collision occurred. This would have taken plaintiff's car even farther beyond defendant's lane of travel.

As a matter of fact, if, as plaintiff's witness testified, the defendant's speed was 90 miles per hour, or even the 70 miles per hour as stated by plaintiff, at the time he observed defendant's car to be only 300 or 400 feet from the intersection, the plaintiff would have been warned of the "immediate hazard" he undertook in attempting to traverse the 43-foot lane in front of defendant's oncoming car.

*Refusal of Witness' Testimony as to Speed*

The foundation relied upon by plaintiff to qualify the witness whose testimony was refused was to the effect that this witness had stopped his vehicle on the south side of the intersection where the accident occurred; that his car window was down and he heard the roaring motor of

defendant's vehicle before he could see it, and at the same time he saw plaintiff enter the intersection; that defendant's vehicle appeared about 600 feet away when plaintiff was still coming through the intersection; and that the witness continued to observe defendant's and plaintiff's vehicles and saw the accident. The witness was asked to estimate how fast defendant's car was traveling. When the witness answered that it was between 80 and 90 miles an hour, defendant objected on the ground that there was no proper foundation laid to enable the witness to form a reasonable estimate as to the speed of the defendant's car, and the court said there should be more foundation. The witness then testified he saw plaintiff's and defendant's cars all the time until the accident occurred; that the witness had driven a car for many years, ten years in fact, had opportunity to observe the speed of cars on other occasions and particularly on an occasion when he had been parked next to a through road where cars had been traveling at a high rate of speed, and, based upon that experience and observation, he was able to estimate the speed at which defendant's car was traveling. Defendant interposed the same objection as before, and the court sustained the same. The witness then testified he had had opportunity to observe other cars on other occasions when he was similarly parked beside the highway and opportunity to observe their speed; that he had checked their speed by looking at them; that he had opportunity to observe how long it took the defendant's car to travel the distance from which it first came into view until the point of the accident and until defendant applied his brakes, but that he could not pinpoint it to seconds. The witness was then asked if he could make a reasonable estimate of the speed at which defendant was traveling, and again defendant objected. At this point, the court permitted the witness to answer "Yes." The witness was asked if he had an opinion what was that speed and upon his answering "Yes," he was asked what was that opinion. The same objection being made, the court again sustained. Following this, the witness testified he had watched cars on different occasions traveling on the highway and had checked their speed against his speedometer when those cars passed him; that he had checked his own speed in his own car and had checked speed of cars passing him and observed their speed when they were traveling at a high rate of speed; that the defendant's car was going fast at all times from the time it first came into his view; that the defendant's car "Appeared to be wrapped"; that the word or phrase "wrapped up" meant the engine of the car was being given all the gas that could be given it; and that he heard the roar of the car before it had come into his view. At this point the witness was asked if he was able to compare the speed of defendant's car with the speed of other cars he had observed, to which objection was made and sustained by the court. The defendant then offered to prove by the witness' opinion the speed of defendant's car as the witness observed it coming down the road. The defendant objected and the court sustained. Plaintiff further offered to prove by the witness that in his opinion defendant's car was traveling at a speed of 80 to 90 miles an hour, to which objection was made and sustained.

Concededly, a court has considerable discretion in passing upon the qualification of a nonexpert witness to testify as to the speed of moving objects. 31 Am.Jur.2d, Expert and Opinion Evidence, § 25, p. 522; 32 C.J.S. Evidence § 449, p. 85, and see 9A, Uniform Laws Annotated, Rules of Evidence, Rule 56(1), p. 629. In this case however it was an abuse of discretion to refuse the testimony of the witness after he had laid the foundation as hereinabove indicated. In 31 Am.Jur.2d, Expert and Opinion Evidence, § 157, p. 719, it is said:

"An estimate of the speed at which a conveyance or other object was moving

at a given time is generally viewed as a matter of common observation rather than expert opinion, and it is well settled that any person of ordinary ability and intelligence having the means or opportunity of observation is competent to testify to the rate of speed of such moving object,"

citing Miller v. Jenness, 84 Kan. 608, 114 P. 1052, 34 L.R.A.,N.S., 782; Moore v. Lewis, 201 Va. 522, 111 S.E.2d 788. Similarly in 32 C.J.S. Evidence § 546(53), p. 237, it is stated:

"As a general rule one does not have to be an expert to estimate the speed of a vehicle in ordinary use; and an estimate of the speed of such moving objects may be given by any observer of reasonable intelligence and ordinary experience, or, as otherwise stated, by any observer with knowledge of time and distance. * * *"

This last statement is amply supported by a host of authorities including United States courts and courts from more than 24 other jurisdictions. In the same volume of Corpus Juris Secundum, at page 239, it is also said:

"Accordingly, a witness who observed the moving object in question will be permitted to estimate its speed if he possesses some knowledge or experience, however slight, which will enable him to form an opinion. The qualification of the witness to judge accurately goes to the weight which the jury may give his testimony rather than to its competency. A witness' claim to knowledge may be accepted as a prima facie qualification."

In McClure v. Latta, Wyo., 348 P.2d 1057, 1060, where the foundation for a lay witness to testify as to speed of an automobile was questioned, this court said:

"* * * We agree that there might be a difference in viewpoint as to what weight should be accorded the testimony of these obviously nonexpert witnesses since they had not made speedometer readings or testified in detail as to the

basis upon which they could determine exact speed. However, their testimony was competent to be admitted for such weight as the jury might determine from a consideration of it in conjunction with all of the facts brought out at the trial. 'Expert testimony may be used to aid in determining speed, but testimony of nonexpert witnesses is equally competent.' * * *"

Immediately following this statement, we cited 9C Blashfield, Cyclopedia of Automobile Law and Practice, p. 382 (1954), and then quoted 2 Jones on Evidence, p. 763 (5 ed.), saying:

"'* * * The rate of speed of automobiles on public streets and highways is a matter of daily observation and some knowledge by substantially all persons; it is not a matter exclusively of expert knowledge or skill. Where the rate of speed of such a vehicle is material in an action, any person of ordinary capacity and means of observation who may have observed the vehicle may give his estimate as to the rate of speed at which it was moving. The extent of his observation goes to the weight of his testimony.'"

In the instant case the witness' testimony shows he was in a position to observe and did observe for a reasonable period of time the speed of defendant's approaching vehicle, and therefore he should have been permitted to give his own opinion estimating that speed, and it was error for the court to refuse him that opportunity.

However, there are two matters which bear upon whether that error was prejudicial in this case. The first has to do with the materiality of the offered proof. In the face of plaintiff's previously given testimony that defendant's car was traveling 70 miles per hour, it is illogical to conclude the exclusion of this evidence was prejudicial. Furthermore, as the speed to which the witness was expected to testify exceeded that testified to by plaintiff as much as 20 miles an hour, even if the jury had been given the excluded testimony, it would have been more favorable to defendant than to

plaintiff, as it emphasized the negligence of plaintiff in attempting to cross the intersection in front of a vehicle approaching from so short a distance at such high speed. Of course, in the absence of special findings, we have no way of knowing whether the jury arrived at its verdict on the theory of nonnegligence of the defendant or because of contributory negligence of plaintiff. However, the rule to which this court has adhered is that where no special findings have been made, we must assume every finding was made which was necessary to sustain the verdict or judgment rendered provided only there was substantial evidence which would justify such finding. See School District No. 32, in County of Fremont v. Wempen, 80 Wyo. 311, 342 P.2d 232, 235, and cases cited therein; and Porter v. Wilson, Wyo., 357 P.2d 309, 316. In consequence, while we must hold the exclusion of the testimony of the witness as to speed under the foundation laid for that testimony was in this case error, it was not sufficiently prejudicial to warrant reversal or remand for new trial. We do not overlook that at another time the same witness did testify his estimate of the speed of defendant's car to be between 80 and 90 miles an hour. Having so answered, and defendant objecting to the answer without asking that the same be stricken, the court failed to expressly strike that testimony and withdraw it from the consideration of the jury, simply saying, "There should be more foundation, I think." This did not sustain the objection or serve to exclude the testimony of the witness, but left it before the jury.

*The "Immediate Hazard" Instruction*

■ Section 31–120, W.S.1957 (1965 Cum.Supp.), reads in part as follows:

" * * * every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop * * * and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection."

Because this statute uses the term "immediate hazard" defendant requested the court to define that term by its instruction, and this was done by the court's instruction as follows:

"You are instructed that the term 'immediate hazard' as used in the statute which I have just read, means that a vehicle on a through highway approaching an intersection constitutes an immediate hazard when it is not so far distant from the intersection that considering the rate of speed at which it is traveling it would be reasonable to assume that a collision would occur if the vehicle stopped at the intersection on the stop street were to start in motion and move into the path of the vehicle on the through street."

Although plaintiff's objection to the giving of this instruction is partly based on the theory that the phrase "immediate hazard" is not a legal term requiring definition, it is principally objected to as being a confusing and incorrect definition inasmuch as it fails to take into consideration that one may assume others will obey the traffic laws and travel at a lawful speed. We fail to see merit in either of these theories. The court was entitled to say, as a matter of law, what in its judgment the two words meant, and there is nothing in the court's definition of its meaning which is incorrect. Notwithstanding this, we do not infer that it should be considered as a model instruction. The failure of the instruction to also point out that one may assume that others will obey traffic laws and travel at a lawful speed was not error as this was contained in another instruction, and the jury was told all instructions were to be considered together.

*Refusal of Instruction Offered by Plaintiff*

■ Defendant's car was traveling upon a four-lane through highway defined as such by § 31–78(h) (6), W.S.1957. On the date of the accident, July 11, 1965, paragraphs (a) and (c) of § 31–130, W.S.1957

(1965 Cum.Supp.) were in force and read as follows:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

"(c) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

Appellant claims it was error not to have included paragraph (c) in the court's instruction which set forth paragraph (a), supra.

Paragraph (c) was enacted by ch. 55, § 1, S.L. of Wyoming, 1959. This was four years after § 31–78(h) (6) had defined "Through" highways, and § 31–85, W.S. 1957, had made the act applicable and uniform throughout the State and in all political subdivisions and municipalities. Also, paragraph (a) of § 31–146, W.S.1957, had authorized designation of such "through highways." In consequence, all of these provisions must be read together in order to correctly ascertain the applicability of either or any of them under the facts present. When this is done, the requirement of paragraph (c), that "[t]he driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection," becomes inapplicable to the defendant-driver of a vehicle upon the "through highway."

It is unreasonable to conclude that the legislature intended to defeat its own patent purpose which was to facilitate rapid transit upon "through" highways, by subjecting drivers of vehicles upon those arteries to the restrictive provisions of the disputed paragraph (c).

It follows that there was no error in the court's refusal to incorporate paragraph (c) in the criticized instruction or in failing to otherwise include it elsewhere in the instructions given the jury.

Finding no reversible error present, the verdict of the jury and the judgment of the court thereon are affirmed.

Affirmed.

McINTYRE, Justice (dissenting).

I cannot quarrel with the conclusion arrived at in the majority opinion to the effect that it was error not to permit the testimony offered by plaintiff from a witness who was at the intersection where the accident happened, who saw the accident, and who (according to the offer made) would have given his opinion as to defendant's speed.

However, if it is held to have been erroneous for the trial court to exclude this offered testimony, then I cannot go along with the conclusion that the exclusion was nonprejudicial.

To say the exclusion was not prejudicial because plaintiff himself testified as to defendant's speed would imply there is no place in the trial of cases for corroborating testimony. A jury might very well be inclined to disbelieve the testimony of a party who has an interest in the outcome, when it would accept the party's testimony upon its being corroborated by a disinterested bystander who saw the accident.

Even if the witness was estimating defendant's speed at a rate higher than the plaintiff estimated it, there would be no reason to say it would not corroborate plaintiff's theory that defendant was driving at an excessive rate of speed. For cases which hold that a party is not conclusively bound by his own testimony as against other evi-

dence which the fact-finding body might fairly believe, see the following cases and authority:

Gibson v. Mendocino County, 16 Cal.2d 80, 105 P.2d 105, 108; Holland v. Morgan & Peacock Properties Company, 168 Cal. App.2d 206, 335 P.2d 769, 773; Valdin v. Holteen, 199 Or. 134, 260 P.2d 504, 509; Dahlgren v. Blomeen, 49 Wash.2d 47, 298 P.2d 479, 481–482; Green v. Floe, 28 Wash.2d 620, 183 P.2d 771, 772; Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328, 331; Annotation 169 A.L.R. 798, 809; and 9 Wigmore, Evidence, § 2594a, pp. 597–601 (3d Ed.).

In the annotation cited above, it is stated the rule that a party is entitled to the benefit of the testimony of other witnesses in contradiction to his own is especially applicable to circumstances of an accident or similar event. Also, in the Valdin v. Holteen case cited above, it is said, where the testimony of a party is in the nature of an estimate or opinion as to which he may honestly be mistaken, he does not unequivocally concede that the fact is in accord with the opinion expressed. In the case we are dealing with plaintiff's testimony relative to defendant's speed was only an estimate.

The writer of the majority opinion in this case seems to suggest the excluded testimony would have been more favorable to defendant than to plaintiff, because it would have emphasized the negligence of plaintiff.

Of course, this conclusion would be relevant only if we assume the jury found plaintiff guilty of contributory negligence. We are not entitled to make such an assumption. Moreover, we cannot in any event decide for the jury how it would have reasoned and whether it would have considered the testimony helpful to plaintiff or defendant. Suffice it to say, if defendant had thought it was going to help his case for an impartial bystander to say defendant was traveling 80 to 90 miles per hour, he probably would not have objected so strenuously to the witness' opinion being expressed.

Although the witness at first stated the speed of defendant's car was between 80 and 90 miles per hour, an objection was immediately made and sustained. It is true the objector did not ask to have the answer stricken, but thereafter counsel for plaintiff repeatedly attempted to qualify the witness and to have him restate his opinion as to speed. Each time objection was made and sustained without the witness being permitted to repeat his opinion as to speed. In view of the court's repeated and final exclusion of the witness' opinion as to defendant's speed, we ought to assume the jury understood what the court intended, i. e., that the testimony sought from this witness was incompetent for the jury to consider.

For the reasons stated, I am unable to concur in the conclusion that error in excluding the testimony in question was nonprejudicial.