Present:  All the Justices

JACKIE G. GREENWAY, JR.
                         OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No. 961996                                JUNE 6, 1997

COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA


     In a bench trial, Jackie G. Greenway, Jr. was convicted in

the Circuit Court of Prince George County on two counts of

involuntary manslaughter arising out of a fatal motor vehicle

accident.  On appeal, Greenway asserts that the trial court erred

in admitting the opinion testimony of a 12-year-old witness

concerning the speed of Greenway's vehicle immediately prior to

the accident.  Greenway further asserts that the evidence was not

sufficient to sustain a finding of criminal negligence necessary

to support his convictions for involuntary manslaughter.

                            Background

     Because the Commonwealth prevailed in the trial court, we

will view the evidence and all reasonable inferences drawn

therefrom in the light most favorable to the Commonwealth.  Parks

v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980),

cert. denied, 450 U.S. 1029 (1981).

     At approximately 11:00 a.m. on May 29, 1994, the Sunday of

Memorial Day weekend, Greenway drove a blue Ford Bronco south in

Prince George County on Interstate 95 in heavy traffic.  At

trial, Thomas Hawick testified that he observed Greenway "coming

up behind me real fast" in the left southbound lane of the

Interstate.  Hawick, who was driving his vehicle at the 65 mile

per hour speed limit, estimated the Bronco's speed at "eighty,

ninety miles an hour . . . [m]aybe faster."  Hawick believed that Greenway's vehicle would strike the rear of his vehicle and so he "mashed on the gas."

According to Hawick, Greenway then pulled into the right lane of the Interstate, passed Hawick's vehicle, and "plowed into the vehicle in the right lane."  This vehicle, a maroon Bronco, "flipped twice, and then it just shot right into the woods." Kimberly Dawn Wray, the driver of the maroon Bronco, died at the scene of the accident; Angela Nicole Yerovsek, a passenger in the maroon Bronco, died at the Medical College of Virginia Hospital emergency room where she was transported for treatment of her injuries.  Hawick further testified that following the collision Greenway then "weaved to the left, in the left lane, and he went on the shoulder a little bit, then he got back in the right lane, and then he was going real fast."

Rhonda Thacker testified that on the morning of the accident she was stopped for a red light on the Route 301 overpass of Interstate 95.  Justin Thacker, her 12-year-old son, called her attention to Greenway's vehicle, saying that it was going to hit the maroon Bronco.  Rhonda Thacker estimated Greenway's speed at "a minimum of eighty-five" miles per hour.  She further testified that Greenway's vehicle "was like in the middle . . . not in one lane or the other, it was more like in the middle of the white [line] that divides the two [lanes]."

Justin Thacker testified that he observed Greenway's vehicle as it crossed under the overpass "going pretty fast."  The Commonwealth's Attorney then asked Justin if he had "been in cars

all [his] life as a passenger." Justin stated that he had. The Commonwealth's Attorney then asked Justin if he knew "how fast or do you have an opinion of how fast [Greenway's] vehicle was going?" Justin gave a contradictory answer, stating, "No, sir, I don't. He was going, say, ninety."

Greenway's counsel then objected, asserting that Justin was incompetent to testify as to the speed of the vehicle. Greenway's counsel argued that "a 12-year-old boy, who is not even eligible and won't be for four more years to even have a driver's license, [could not] estimate speed." The Commonwealth responded that such evidence was "totally admissible. The weight it would be given is for the Court to determine." The trial court ruled that Greenway could "challenge it on cross" and permitted the Commonwealth to continue its examination.

In response to a question from the Commonwealth, Justin confirmed his estimate of Greenway's speed at ninety miles per hour. He further testified that Greenway's vehicle was "swerving . . . before it got up close to the [maroon] Bronco it would . . . try to get in that lane then come back, then go and then come back, and then it just hit it." On cross-examination, Greenway's counsel asked Justin to describe in detail the swerving motion of Greenway's vehicle, but did not further question Justin on the issue of speed or the basis for his estimate of the speed of Greenway's vehicle.

Additional evidence showed that approximately half a mile from the accident scene, Greenway's vehicle left the Interstate, crossed a gully and service road, entered the front yard of a

private residence, and struck a tree. When interviewed at the scene, Greenway told police investigating the accident that he believed he had hit Hawick's vehicle which "got squirrly," and when Greenway tried to stop "he must have hit the accelerator" instead. Although stating that he was tired and had been awake since 3:30 a.m., Greenway did not assert at that time that he had fallen asleep while driving. However, when subsequently interviewed by a State Police trooper at Southside Regional Hospital, Greenway asserted that he had struck Hawick's vehicle after falling asleep while driving.

At the conclusion of the Commonwealth's evidence, Greenway made a motion to strike, asserting that the evidence was consistent with the assertion that Greenway had fallen asleep while driving. The trial court ruled that "on a prima facie standard" the evidence showed that Greenway was able to control his vehicle to avoid a collision with Hawick's vehicle. Based upon that evidence, the trial court rejected the theory that Greenway had fallen asleep.

Greenway called only one witness, Robert D. Maclin, who testified that he saw Greenway's vehicle go "out to pass" and strike the maroon Bronco. Although he could not give an opinion of the speed of Greenway's vehicle, Maclin stated that he was travelling fifty-five to sixty miles per hour and did not remember being passed by Greenway or any other vehicle.

The trial court overruled Greenway's renewed motion to strike, holding that Maclin's testimony failed to "shed any light" on the question whether Greenway had fallen asleep.

Reviewing the evidence of Greenway's excessive speed, erratic driving, his ability to avoid hitting Hawick's vehicle, and his flight from the accident scene, the trial court convicted Greenway of two counts of involuntary manslaughter. After receipt of a pre-sentence report, the trial court sentenced Greenway to consecutive seven-year prison terms for the convictions.

Greenway appealed his convictions to the Court of Appeals, challenging, inter alia, the trial court's admission of Justin's testimony concerning Greenway's speed and the sufficiency of the evidence to support the finding that Greenway's conduct amounted to criminal negligence. In an unpublished order, the Court of Appeals refused Greenway's petition for appeal, holding that Justin's testimony was properly admitted under Moore v. Lewis, 201 Va. 522, 525, 111 S.E.2d 788, 790 (1960). The Court further held that the evidence taken in the light most favorable to the Commonwealth was adequate to sustain the trial court's finding of criminal negligence. King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977). We awarded Greenway this appeal.

Competency of Child Witness to Testify Concerning Speed

Our decisions follow the mainstream of authority which holds that expert knowledge is not required for a witness to be considered qualified to make an estimate of speed. As we said in Moore:

"An estimate of the speed at which an automobile was moving at a given time is generally viewed as a matter of common observation rather than expert opinion, and it is accordingly well settled that any person of ordinary experience, ability, and intelligence having the means or opportunity of observation, whether an

expert or nonexpert, and without proof of further qualification may express an opinion as to how fast an automobile which came under his observation was going at a particular time.  The fact that the witness had not owned or operated an automobile does not preclude him from so testifying.  Speed of an automobile is not a matter of exclusive knowledge or skill, but anyone with a knowledge of time and distance is a competent witness to give an estimate; the opportunity and extent of observation goes to the weight of the testimony."

Moore, 201 Va. at 525, 111 S.E.2d at 790 (citations omitted).

However, "[i]n order to be competent to testify on the subject the witness must have had a reasonable opportunity to judge the speed of the automobile."  Id., 111 S.E.2d at 791.  Accordingly, before any witness, regardless of age or driving experience, is permitted to offer an opinion concerning the speed of a vehicle, the record must show both that the witness has sufficient knowledge of time and distance to determine speed, and that the witness observed the vehicle in motion over a period of time and distance adequate to make that determination.  Once these threshold qualifications are established, the witness' degree of knowledge and the duration and quality of the witness' observations become matters of credibility, not competence.  Thus, in Moore we held that the testimony of an adult witness who was just learning to drive and had many years experience of automobile travel as a passenger "was admissible for such weight as the jury thought it should have."  Id.

We have not previously considered the standard of competency required for a child witness to offer an opinion as to the speed of a vehicle.  In Meade v. Meade, 206 Va. 823, 147 S.E.2d 171 (1966), we did not reach the question whether a 14-year-old boy

was competent to offer an opinion as to a vehicle's speed because the evidence showed that he had not actually seen the vehicle in motion prior to the accident, but had only heard the sound of the vehicle. Accordingly, the boy's lack of a reasonable opportunity to judge the vehicle's speed, not his youth, was the basis for finding his testimony incompetent. Id. at 828-29, 147 S.E.2d at 175.

As a general proposition, however, we have long held that a child is competent to testify if he or she possesses the capacity to observe, recollect, communicate events, and intelligently frame answers to the questions asked of him or her with a consciousness of a duty to speak the truth. Cross v. Commonwealth, 195 Va. 62, 64, 77 S.E.2d 447, 449 (1953).

Similarly, we have held that:

> The competency of a child as a witness to a great extent rests in the sound discretion of the trial judge whose decision will not be disturbed unless the error is manifest. It is the duty of the trial judge to determine such competency after a careful examination of the child. In deciding the question the judge must consider the child's age, his intelligence or lack of intelligence, and his sense of moral and legal responsibility.

Hepler v. Hepler, 195 Va. 611, 619, 79 S.E.2d 652, 657 (1954).

In the present case, it was not asserted that the child witness did not have a reasonable opportunity to observe the movement of Greenway's vehicle prior to the accident, or that he could not truthfully recollect or communicate what he had observed. To the contrary, the defense relied upon Justin's testimony that Greenway's vehicle was swerving to support its argument that Greenway had fallen asleep while driving.

Greenway's only objection was that Justin was not competent to estimate speed because he was not himself a driver and, thus, lacked sufficient knowledge of time and distance to form a reliable estimate of speed.

Prior to eliciting Justin's estimate of the speed of Greenway's vehicle, the Commonwealth's Attorney only asked Justin whether he had "been in cars all [his] life as a passenger." This was the extent to which the Commonwealth attempted to establish that Justin had sufficient knowledge of time and distance as these concepts relate to a determination of the speed of a motor vehicle. When asked whether he knew or had an opinion as to the vehicle's speed, Justin stated that he did not, but then offered an estimate of ninety miles per hour. While arguably Justin merely intended to say that he could not be sure of the exact speed, his testimony was at best equivocal as to how he arrived at his estimate.

Upon this record, we cannot say that the Commonwealth laid a foundation that Justin had sufficient knowledge of time and distance to give a reliable estimate of the speed of Greenway's vehicle. Accordingly, it was error to admit that evidence. This error, however, does not require reversal if the error was harmless.

Improper admission of evidence does not create reversible error when it is merely cumulative of other competent evidence properly admitted. Freeman v. Commonwealth, 223 Va. 301, 316, 288 S.E.2d 461, 469 (1982). Contrary to an assertion made during oral argument on appeal by Greenway's counsel, Justin's testimony

was not the sole basis upon which the trial court could have determined the issue of Greenway's speed. Hawick testified that Greenway's speed was "ninety miles an hour . . . [m]aybe faster," and Justin's mother estimated Greenway's speed at a minimum of eighty-five miles per hour. This evidence supports the trial court's finding that Greenway was travelling at an "extremely high speed." Thus, the evidence improperly admitted was merely cumulative and did not deprive Greenway of a fair trial. See Code § 8.01-678; Rodriguez v. Commonwealth, 249 Va. 203, 208, 454 S.E.2d 725, 728 (1995).

### Evidence of Criminal Negligence

In King, 217 Va. at 607, 231 S.E.2d at 316, we defined involuntary manslaughter in the operation of a motor vehicle as an "accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." Under this definition, involuntary manslaughter in the operation of a motor vehicle in this Commonwealth "should be predicated solely upon criminal negligence proximately causing death." Id.

Greenway contends that the Commonwealth's evidence failed to establish that he had actual or constructive knowledge that his actions would place the lives of others in danger, either because the accident resulted from his falling asleep while driving or because his negligence was predicated solely upon excessive speed. We disagree.

The trial court expressly found that the evidence did not support a finding that Greenway had fallen asleep while driving.

Rather the trial court found that Greenway, though driving erratically, was making a conscious effort to maneuver his vehicle through traffic.  Since the record supports this finding of fact, it will be upheld on appeal.  Code § 8.01-680.

Accordingly, we turn to Greenway's contention that the trial court's determination of criminal negligence was improperly predicated solely upon his driving at an excessive speed.

> What distinguishes a speeding violation from the misdemeanor of reckless driving, and the misdemeanor from the felony of involuntary manslaughter, is the likelihood of injury to other users of the highways. And the degree of the hazard posed by a speeding automobile depends upon the circumstances in each case.

Mayo v. Commonwealth, 218 Va. 644, 648, 238 S.E.2d 831, 833 (1977).

Greenway's contention is based on the presumption that a speed of eighty-five to ninety miles per hour on an interstate highway, while constituting civil negligence, does not rise to the level of a criminal disregard for the safety of others.  The fallacy of his contention is that it views speed in isolation while ignoring the attendant circumstances of the accident, of which speed was merely a factor.

In addition to Greenway's excessive speed, the evidence showed that Greenway was weaving through heavy holiday weekend traffic, straddling the lane markers, that he was aware of a near-miss of another motor vehicle, and that he continued shifting lanes abruptly rather than adjusting his speed to the flow of traffic.  Viewed in the context of these circumstances, the evidence supports the trial court's finding that Greenway's

actions showed a reckless disregard for human life constituting criminal negligence sufficient to support the convictions for involuntary manslaughter.

For these reasons, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.