PRESENT:   Carrico, C.J., Compton, Lacy, Keenan, Koontz, and
           Kinser, JJ., and Poff, Senior Justice

SHELBY INSURANCE COMPANY

                                        OPINION BY
v.  Record No. 971275       SENIOR JUSTICE RICHARD H. POFF
                                      February 27, 1998
EDWARD A. KOZAK, ET AL.

          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

     In this appeal from a judgment for the plaintiff in a

second jury trial, the principal issue is whether the trial

court erred in limiting that trial to the issue of damages.

     Edward A. Kozak (the plaintiff) filed a motion for judgment

against Eyad Bn-Khalifa (the defendant) claiming $1.5 million in

damages for personal injuries sustained in an automobile

collision.  The plaintiff served the motion upon both the

defendant and Shelby Insurance Company (Shelby), which provided

uninsured motorist coverage to the plaintiff's employer, Daniel

& Osborne Irrigation.

     The accident occurred in Richmond near the middle of the

intersection of Augusta Avenue and Kent Road.  The speed limit

on each road is 25 m.p.h.  Traffic running east and west on

Augusta is controlled by stop signs erected at the intersection.

The defendant was driving a passenger car east on Augusta

approaching Kent.  The plaintiff was operating his employer's

pickup truck north on Kent approaching Augusta.

The investigating officer testified that the damage to the pickup was "to the full front of it"; that the damage to the car was "[t]o the right side, the right side, all to the right side"; and that the defendant's east-bound car had come to rest on the curb at the corner opposite the point of collision, facing in a westerly direction. The officer said that the defendant estimated his speed approaching the intersection at 25 m.p.h. and that he said he "never saw the sign." In answer to the officer's inquiry, the plaintiff said that he had approached the intersection at 20 m.p.h.

The plaintiff testified at trial that his speed was "twenty-five miles per hour tops"; that, when he was "2 car lengths" from the intersection, he saw the defendant's car "[m]aybe 6 car lengths back"; and that he had "seen the stop sign" on Augusta but did "not know for sure" whether the defendant had stopped before he entered the intersection. Asked by his counsel if he had testified earlier that he had been "hit right in front of the driver's door on your truck", the plaintiff said that "the impact was on the left front of my car. I don't say it was in my door. If I did, that was a mistake."

The plaintiff then described the injuries he had sustained in the collision, the medical treatment he had received, the suffering he had endured, the medical expenses he had incurred, and the wages he had lost during his convalescence. He had

received $75,925.93 in medical bills, and he claimed $42,240 in lost wages.

The defendant testified that he was travelling at a speed of 25 m.p.h. approaching the intersection. Asked to explain his "version of the story of this accident", the defendant said:

> Okay. Before I get to that intersection there is a lot of cars parked on my right. So I stop at the stop sign. I looked to the left, then to the right, then to the left again. Both was clear for me, then I moved to the middle of the street. Before I get to the middle, . . . my friend was shouting my name and the accident happened.

Aiman Al-Ammir, a passenger in the front seat of the defendant's car, testified that the defendant "stopped at the stop sign"; that both the defendant and he "looked both ways"; and that he "didn't see any cars." He said that, when they had "almost passed the middle of the intersection", he saw the pickup "coming fast"; that he "yelled" out the defendant's name; that "the collision took place"; and that "[o]ur car was turned like 180 degrees."

At the conclusion of all the evidence, the plaintiff moved to strike the defendant's evidence and submit the case to the jury limited to the question of damages. The trial court overruled that motion and instructed the jury on all issues related to both liability and damages.

The jury returned a verdict awarding the plaintiff "damages at $50,000.00 with no interest." The plaintiff moved the court

3

to set the verdict aside as inadequate and to limit a new trial to the issue of damages. The defendant asked the court to set aside the verdict and grant a new trial on all issues. The trial court granted the plaintiff's motion. The second jury returned a verdict awarding the plaintiff $400,000 in damages, and we awarded Shelby an appeal.

I

In one of three assignments of error, Shelby contends that the trial court erred in limiting the second trial to the issue of damages.

In support of a motion to set aside the first verdict, the plaintiff's counsel argued in the trial court that "it's a compromise verdict" and that "[a] verdict of less than the specials, by our Supreme Court, cannot stand." Responding to that argument, the trial court said, "My rulings have been if the special damage is uncontested and [the verdict] is way below the special damages, the Court sets the verdict aside and only set [sic] the case for retrial on damages".

We find no error in the trial court's denial of the plaintiff's motion to submit the case to the jury at the first trial limited to the question of damages and in granting the defendant's instruction on the definition and effect of a plaintiff's contributory negligence. Nor do we find error in the court's decision to set aside the verdict in the first

4

trial. But we are of opinion the court erred in limiting the issue in the second trial to damages.

The trial court apparently applies its rulings with respect to setting aside verdicts and limiting the retrial to damages only to cases in which "the special damage is uncontested and [the verdict] is way below the special damages". However, those rulings overlook the decisions of this Court in cases in which it appears that the inadequacy of the damage award was the result of a compromise reached by the jury.

In Rawle v. McIlhenny, 163 Va. 735, 177 S.E. 214 (1934), we defined the rules with respect to setting aside verdicts in five classes of cases. Concerning the class relevant here, we said:

> In the fifth class of cases where . . . the evidence with reference to liability has probably exerted a material influence upon the jury in determining the amount of the verdict, or the evidence warrants the inference that, instead of deciding the question of liability, the jury has arbitrarily determined to make both parties bear a part of the burden of the injury, . . . [and] the court sets aside a verdict of this class, it should grant a new trial on all issues.

> In all five classes a sound discretion is vested in the trial court as to whether . . . a new trial should be granted upon all issues, or limited to the question of damages . . . . However, in the exercise of this discretion it is always to be borne in mind that, before a new trial should be limited to the amount of damages, it should be reasonably clear that the misconduct or misconception of the jury from which the inadequacy of the verdict has resulted, has not extended to its determination of the question of liability as well as to its determination of the amount of damages.

163 Va. at 750-51, 177 S.E. at 221.

5

The issue of liability at the first trial was contested. The jury may have accorded the recollection of the investigating officer that the defendant said at the time of the accident that he had not seen the stop sign greater weight than the testimony of the defendant and his friend. And, considering the testimony concerning the location of the damage to the respective vehicles and the force of an impact sufficient to turn the defendant's car from an eastward course to a westward heading, the jury could have rejected the plaintiff's testimony that he was not exceeding the 25 m.p.h. speed limit as he approached and entered the intersection.

Applying the principles defined in Rawle, we will reverse the ruling limiting the issue in the second trial to damages and remand the case for a new trial on all the issues.

II

In another assignment of error, Shelby contends that the trial court "erred in the first trial by refusing to admit the estimate of the Plaintiff's speed by [the defendant's] passenger." Because that question may arise in a new trial on remand, we will consider it now.

Al-Ammir, the passenger in the defendant's car, testified that, when he first saw the pickup, it was "two and a half car lengths away from the middle of the intersection where we were"; that it was "coming fast"; and that he "yelled" out the

6

defendant's name, and "the collision took place."  Asked if he could "make an estimate of the speed of the truck", Al-Ammir replied, "[y]es, 45 to 50."  The trial court sustained the plaintiff's objection to the answer.

In Moore v. Lewis, 201 Va. 522, 111 S.E.2d 788 (1960), we applied the rule that, "[i]n order to be competent to testify on the [speed of an automobile] the witness must have had a reasonable opportunity to judge the speed of the automobile." We explained that when a witness has only a brief opportunity or interval of time to observe the speed of the vehicle, that fact affects only the weight of his testimony and not its competency. 201 Va. at 525, 111 S.E.2d at 791.  In further explanation of the rule, we noted that

> "[a]n estimate of the speed at which an automobile was moving at a given time is generally viewed as a matter of common observation rather than expert opinion, and it is accordingly well settled that any person of ordinary experience, ability, and intelligence having the means or opportunity of observation, whether an expert or nonexpert, and without proof of further qualification may express an opinion as to how fast an automobile which came under his observation was going at a particular time.  The fact that the witness had not owned or operated an automobile does not preclude him from so testifying.  Speed of an automobile is not a matter of exclusive knowledge or skill, but anyone with a knowledge of time and distance is a competent witness to give an estimate; the opportunity and extent of observation goes to the weight of the testimony."

Id. at 525, 111 S.E.2d at 790 (citation omitted); see also Greenway v. Commonwealth, 254 Va. 147, 151-52; 487 S.E.2d 224, 227 (1997).

7

The plaintiff argues that the trial court properly found that Al-Ammir was not competent to estimate the speed of the pickup truck because he had only "a momentary glimpse of [the truck] some two car lengths away."

In response, Shelby contends that, because Al-Ammir testified that he saw the truck at a specific distance prior to impact and that he could provide an estimate of speed, the trial court should have admitted his estimate and allowed the jury to determine what weight to accord the testimony. We agree.

The witness testified that he observed the automobile when it was two and a half car lengths away and that, moments later, the collision occurred. We think this testimony was sufficient to show that he was a person "with a knowledge of time and distance" and competent "to give an estimate" of the vehicle's speed. Al-Ammir's "opportunity and extent of observation" was a factor for the jury to consider in determining the weight to be accorded evidence relevant to the issue of liability. We hold, therefore, that the trial court erred in ruling that this testimony was inadmissible.

## III

In support of a third assignment of error, Shelby argues that the trial court erred in the conduct of the first trial by refusing to admit its proffer of a "Petition to Grant a Restricted Permit to Drive a Motor Vehicle" filed by the

8

plaintiff pursuant to Code § 46.2-391.  The petition reported that the plaintiff had been "addicted to and psychologically dependent upon the use of alcohol"; that he had incurred prior convictions for driving under the influence of alcohol; and that his driver's license had been suspended for a period of three years.  The petition also stated that the plaintiff had "presented himself for an evaluation by the John Tyler Alcohol Safety Action Program" and that he "is no longer addicted to . . . the use of alcohol . . . and he does not constitute a threat to . . . others with regards to the driving of a motor vehicle . . . ."

Counsel for Shelby acknowledged at trial that he had "no evidence that drinking played any role in this accident."  We find none of record.  Hence, the petition was inadmissible as irrelevant and prejudicial, see DeWald v. King, 233 Va. 140, 146, 354 S.E.2d 60, 63 (1987), and we will uphold the trial court's ruling in the first trial excluding Shelby's proffer.

Shelby also contends that the trial court "prevented Shelby from proving that the plaintiff's job required him to possess a license and that he was claiming lost wages during a time he did not possess a license."  We find no merit in that contention. The record of the second trial shows that the trial court allowed just such testimony delivered by Patrick Conner and Charles Osborne, respectively, the operations manager and

9

president of the plaintiff's employer, witnesses called and interrogated by Shelby's counsel.

In summary, we will reverse the ruling of the trial court in the first trial limiting the second trial to the issue of damages, annul the judgment entered in the second trial, and remand the case for a new trial on all the issues.

<u>Reversed and remanded</u>.