COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Athey
Argued at Norfolk, Virginia


LARRY LORENZO TAYLOR, JR.

                                                    MEMORANDUM OPINION* BY
v.          Record No. 0848-23-1                    JUDGE MARY GRACE O'BRIEN
                                                    JULY 23, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Larry Lorenzo Taylor, Jr. ("appellant") was convicted of felony hit

and run, in violation of Code § 46.2-894. Appellant asserts that the court erred by admitting a video

depicting the incident and by refusing to declare a mistrial after the jury viewed the video. Finding

no reversible error, we affirm appellant's conviction.

BACKGROUND[1]

On the evening of October 25, 2021, Nicola Vidal and other members of the Old Dominion

University tennis team visited a 7-Eleven near campus to shop for a team celebration. Before the

team arrived, appellant had drawn the attention of store manager Gloria Gardiner. Gardiner saw

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In so doing, we "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

that appellant appeared "irate" and was circulating through the store without making a purchase. After walking "in and out" of the store several times, appellant went to his dark-colored sedan parked in front of the entrance. He opened the car door but did not leave. Instead, he paced back and forth in front of the store, "linger[ed] . . . for [approximately] 30, 45 minutes," and watched Gardiner through the window as she rang up customers' purchases. Concerned, Gardiner moved away from the cash register and took cell phone pictures of appellant as he stood next to his car. She texted two pictures to the next shift of employees, advising them to "be alert" and notify the police if they saw appellant.

Perrin Priest, who was sitting in a car parked next to appellant's sedan, saw appellant and the tennis players in front of the store. Priest could not hear what appellant said to the tennis players but observed that his body language was "aggressive." Appellant got in his car, and Vidal and his teammates gathered in front of it, just outside the store. Vidal was standing directly in front of the car when appellant started its engine. Without warning, appellant drove into Vidal and his teammates, jumping the curb onto the sidewalk. Appellant's car struck Vidal's leg and pinned it against a stone trash receptacle. After striking Vidal, appellant backed up and sped away.

Vidal sustained a broken leg and severed femoral artery. Priest immediately exited his car to render aid, and emergency personnel ultimately transported Vidal to a hospital. Vidal underwent two surgeries and several months of physical therapy but still lacked full mobility by the time of trial one year later.

During its opening statement, the Commonwealth played surveillance footage of the incident for the jury without objection. Moreover, in their testimony, Priest and Gardiner identified appellant as the driver who struck Vidal. During Gardiner's direct examination, the Commonwealth played the surveillance footage again, and she confirmed that it depicted appellant's car "r[u]n[ning]

- 2 -

over [Vidal]."[2] She stressed that she was "sure" that the footage depicted appellant's car and appellant himself. When asked how she could be certain, Gardiner emphasized that she had taken cell phone pictures of appellant and "in one of the photos . . . he was looking right at [her]."

On cross-examination, Gardiner said she was in the back of the store when appellant hit Vidal, but she later watched footage of the incident from a store surveillance camera that "capture[d] . . . the first two, three rows of cars that[] [were] parked in front of [the] store." She testified that she moved to the back of the store after Vidal and his teammates exited and that she had "just left" the front when she heard a "boom." "[When] . . . [she] got to the window," Gardiner saw "[t]he car [go] down a dead-end street." Vidal was on the ground bleeding, and the stone trash receptacle against which Vidal had been pinned was broken.

Gardiner agreed that the footage played during her direct examination was not 7-Eleven store footage. She admitted that she had never seen that footage previously and that she was not its custodian. Nevertheless, on redirect, Gardiner confirmed that the footage presented at trial "[c]learly" depicted the incident, "just in a different angle."

After Gardiner testified, the Commonwealth rested. Appellant objected to the admission of the video and moved for a mistrial. He stressed that the source and the reliability of the video were unknown and that it had been played during opening statement based on his "understanding that the custodian was [t]here." The Commonwealth responded that, when it played the video, it believed that 7-Eleven was the source of the video and that Gardiner was the custodian. The court noted that Gardiner had testified that it accurately portrayed what she had observed on the store video and ruled that the video would "remain in evidence." The court took appellant's motion for a mistrial under advisement.

---

[2] The record demonstrates that the Commonwealth questioned Gardiner about the video as it played. Either before or shortly after the video begins to play, the Commonwealth stated, "We'll offer the tape into evidence, Your Honor." Taylor did not object.

In his motion to strike and during closing argument, appellant argued that the evidence failed to prove identity because Priest testified that the perpetrator was wearing "a dark overcoat," but Gardiner testified he was wearing "a white T-shirt." He asserted further that, even assuming he was the perpetrator, the evidence failed to prove that he intended to injure anyone. The jury acquitted appellant of malicious wounding and lesser-included offenses, and it convicted him of felony hit and run. Following the jury's verdict, the court denied appellant's motion for a mistrial.

ANALYSIS

I. Admissibility of Video

Appellant asserts that the court erred by admitting the video because Gardiner could not authenticate it. He contends "there was no showing that the video had not been edited or otherwise altered from the original," and "[w]ithout some showing of its origin, it cannot be assumed that it was an accurate depiction of the crucial events." To the extent that Gardiner testified that the video accurately represented what she saw on the 7-Eleven surveillance video, appellant contends that her testimony was not credible. Moreover, he asserts that, due to the lack of a proper evidentiary foundation, the evidence failed to prove that the video accurately depicted the incident, and therefore, the probative value of a potentially unreliable video was outweighed by its "unfair prejudice and potential for misleading the jury."

We hold that any error in admitting the video was harmless. "Non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have "any substantial" influence on the verdict.'" *Dandridge v. Commonwealth*, 72 Va. App. 669, 685 (2021) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 270 (2018)). Further, "[i]mproper admission of evidence does not create reversible error when it is merely cumulative of other competent evidence properly admitted." *Greenway v. Commonwealth*, 254 Va. 147, 154 (1997).

- 4 -

By the time appellant objected to the admission of the video as an exhibit, the jury had already viewed it twice[3]; therefore, its admission was harmless because it was cumulative of other evidence already presented to the jury. *See id.* Moreover, the video did not substantially influence the jury's verdict. *See Dandridge*, 72 Va. App. at 685. The jury acquitted appellant of malicious wounding and any lesser-included offenses. *See Cromartie v. Billings*, 298 Va. 284, 306 (2020) (finding that a jury's verdicts "became the law of the case and govern[ed] all subsequent proceedings, including th[e] appeal"). The only issue before the jury that was pertinent to appellant's hit-and-run conviction was the identity of the driver who hit Vidal and fled. In closing argument, the Commonwealth did not rely on the video to establish appellant's identity as the perpetrator, and appellant conceded that the video was not clear enough to establish his identity as the driver. Thus, the video had no bearing on that issue.

The evidence establishing the driver's identity primarily consisted of Priest's and Gardiner's testimony. Priest testified that appellant was the driver who struck Vidal. Additionally, although Gardiner did not directly witness Vidal's injury, she did recognize appellant's sedan fleeing the scene immediately after the sound of the collision with the stone trash receptacle. Thus, based on the jury's verdict and the marginal role of the video in establishing appellant's identity, we cannot say that the video substantially influenced the jury's finding that appellant was the driver of the vehicle that struck Vidal and that he fled the scene. Accordingly, any error in the admission of the video was harmless. *See Dandridge*, 72 Va. App. at 685.

---

[3] We acknowledge the Commonwealth's argument that appellant waived his challenge to the video's admissibility by not making a contemporaneous objection under Rule 5A:18. However, "[a]s an appellate court, we seek 'the best and narrowest ground available' for our decision." *Castillo v. Commonwealth*, 70 Va. App. 394, 457 (2019) (quoting *Harvey v. Commonwealth*, 65 Va. App. 280, 285 n.2 (2015)). "With respect to this assignment of error, we conclude that our determination that the error, if any, was harmless constitutes the best and narrowest ground." *Id.*; *see also Harvey*, 65 Va. App. at 285 n.2 (finding that "resolving the merits . . . constitutes the narrowest and best ground" rather than addressing "the Commonwealth's argument that the issue is procedurally defaulted under Rule 5A:18").

II.  Mistrial

This Court reviews the denial of a motion for a mistrial for an abuse of discretion. *Fowlkes v. Commonwealth*, 52 Va. App. 241, 248 (2008).  "Whether improper evidence is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case."  *Id.* (quoting *Beavers v. Commonwealth*, 245 Va. 268, 280 (1993)).  We will not reverse the court's refusal to grant a mistrial absent "a manifest probability as a matter of law that the improper evidence prejudiced the accused."  *Id.* (quoting *Mills v. Commonwealth*, 24 Va. App. 415, 420 (1997)).

Appellant asserts that the court erred by denying his motion for a mistrial because it admitted "the unauthenticated video" into evidence.  Although he did not seek a curative instruction, he maintains that such an instruction "would have been highly unlikely to have cured the prejudice" to him by admission of the video.  Assuming that appellant properly preserved his challenge to the court's admission of the video, we conclude that appellant was not entitled to a mistrial because the court did not commit reversible error by admitting the video.  Therefore, the court did not abuse its discretion by denying appellant's motion.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*