## Richmond

## EDWARD S. MAYO V. COMMONWEALTH OF VIRGINIA

November 23, 1977.

Record No. 770333.

Present: All the Justices.

*Leslie R. Watson (Rhodes and Watson,* on brief), for plaintiff in error.

*A.R. Woodroof, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

POFF, J., delivered the opinion of the Court.

This is an appeal from a judgment order entered November 16, 1976 upon a finding by the trial court, sitting without a jury, that Edward S. Mayo was guilty of involuntary manslaughter in the operation of a motor vehicle. Sentence was fixed at two years in the penitentiary.

The fatality resulted from a two-car collision which occurred at 9:00 a.m., March 2, 1976, on Rosemont Road at its intersection with Kings Point Road. Rosemont Road, running north and south, was straight and level and contained a median strip with two traffic lanes and a short turning lane marked on each side. The intersection was located in a residential community where the speed limit was posted at 35 m.p.h. The weather was clear and visibility was good.

Under familiar principles, we review the evidence in the light most favorable to the Commonwealth. Mrs. Vina B. Clifton was driving north on Rosemont Road with her daughter, Jackie, in the right front passenger seat. Mrs. Clifton testified that, as she approached the intersection, she moved into the short lane to turn west onto Kings Point Road; that she engaged her turn signal and stopped to allow a car traveling south to pass; that she looked to her right, saw a "light-colored" car "about a block away" approaching from the north, and proceeded with her turn; and that she remembered nothing more until she awoke in a hospital. After the Clifton car had crossed the left south-bound

lane, it was struck in the right side by the Mayo car. Jackie died 10 days later of injuries sustained in the collision.

Barbara Epps was driving a light-colored car in the left south-bound lane on Rosemont Road. She testified that, at a point "at least a block" north of the subject intersection, she noticed in her rear view mirror that the Mayo car "was coming out from behind me and started speeding up"; that she was "going at least between thirty-five and forty" when Mayo passed her in the right lane "going at sixty-five or more"; that "it was like, you could say someone wanted to drag race"; that Mayo's car "went from accelerating to putting on his brakes"; and that Mrs. Clifton would "have had time to make it" if Mayo had not passed her.

Richard Larrivee, Mayo's high school friend, was driving south on Rosemont Road when he saw Mayo's car leaving a gas station. Larrivee testified that he waved at Mayo and they proceeded south on Rosemont Road "in parallel lanes"; that they stopped at a traffic light two blocks north of the subject intersection and held a conversation; that "the light changed and then as we were pulling off [Mayo] pulled in the left lane in front of me"; that as they approached the block north of the subject intersection, he saw in the left lane ahead of Mayo's car another car which was "doing less than thirty-five because two cars . . . passed all three of us on the right side"; that Mayo, traveling "[a]bout thirty-five, a little more", moved into the right lane to pass; and that the Clifton car turned across the south-bound lanes, Mayo applied his brakes, and the collision occurred. Asked on cross-examination why he had not reported the accident to the police, Larrivee said that "it was just too many people there that seen the accident and I was working. I didn't have time to stay there."

The testimony of the investigating officer, illustrated by a sketch and photographs, showed that the left wheels of the Mayo car were just over the white line inside the left lane when the brakes were applied and that the impact occurred at or near the western edge of the right lane. Tire marks indicated that the Mayo car slid in a gradual curve 99 feet to the point of impact and then skidded laterally a distance of 33 feet before it came to rest facing north on the sidewalk at the southwest corner of the intersection. The Clifton car came to rest facing east, apparently stopped by a guyline on a utility pole located on the south side of

Kings Point Road. The pictures introduced as exhibits reflected extensive damage to both cars and showed that the guyline was almost severed. Although Mayo did not testify, he told the officer that his speed was between 35 and 40 m.p.h. and that he did not recall changing lanes or passing a car.

■ Defendant contends that he had the right-of-way over the left-turning Clifton car; that Mrs. Clifton was guilty of negligence which was the proximate cause of the collision; and that the evidence was insufficient to show that he was guilty of felonious negligence.

Code § 46.1-222 (Repl. Vol. 1974) requires a driver intending to turn left within an intersection to yield the right-of-way to an approaching vehicle when that vehicle "is so close as to constitute a hazard".

Epps testified that she was "at least a block" from Mrs. Clifton when Mayo started to pass and, if he had not passed, Mrs. Clifton would have "had time to make it". This testimony, which defendant calls "incredible", was supported by Mrs. Clifton who said that, before she began her turn, she saw the Epps car "about a block away". At that moment, the Mayo car was in the left lane behind the Epps car and, as the trial court noted, was temporarily concealed from Mrs. Clifton's view. Under those circumstances, we cannot say that the approaching vehicles were so close to Mrs. Clifton as to constitute a hazard, and we hold that she did not violate the statutory requirement to yield the right-of-way.

■ Even if Mrs. Clifton was guilty of some other act of negligence, it would not excuse the felonious negligence of another unless it was "an independent, intervening act alone causing the fatal injury." *Delawder* v. *Commonwealth*, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973). There was no evidence of any such negligence on her part.

■ We consider now whether the evidence was sufficient to support the trial court's finding that defendant was guilty of the criminal negligence with which he was charged.

"[W]e define involuntary manslaughter in the operation of a motor vehicle as the accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *King* v. *Commonwealth*, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977).

■ Defendant says that the most the evidence showed was that he exceeded the speed limit, and he argues that speeding does not constitute felonious negligence. Driving "at a speed or in a manner so as to endanger life, limb or property" is one of the alternative statutory definitions of reckless driving. Code §§ 46.1-189, -190. A violation of the reckless driving statutes does not constitute felonious negligence unless it is "so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury." *Id.* 217 Va. at 605-06, 231 S.E.2d at 316. What distinguishes a speeding violation from the misdemeanor of reckless driving, and the misdemeanor from the felony of involuntary manslaughter, is the likelihood of injury to other users of the highways. And the degree of the hazard posed by a speeding automobile depends upon the circumstances in each case.

■ Rosemont Road was not an open highway in a rural area; it was a city street bordered by sidewalks in a residential community. Such streets are commonly used by pedestrians of all ages, and vehicular traffic is customarily heavy at certain hours of the day. At the hour this tragedy occurred, Mayo's car was one of at least five vehicles proceeding south. In a residential subdivision with multiple intersections, a driver is on notice that other motorists may be entering the street from private driveways, that motorists ahead of him may be changing lanes, that other motorists may be crossing or turning at intersections, and that his own view of conditions ahead may be obscured by traffic around him. Such an environment breeds sudden emergencies which command instant judgment and decisive action.

The physical characteristics of the community were not the only circumstances relevant to a determination of the culpability of defendant's conduct. Mayo and his friend Larrivee had been traveling together for some distance in parallel lanes. They stopped at a red light two blocks north of the subject intersection and held a conversation. As the light turned green, Mayo "pulled in the left lane in front of" Larrivee, and the two vehicles continued in tandem until they overtook and passed the Epps car at the next intersection. Within the course of one city block, and starting from a stop, Mayo attained a speed approximately twice the posted limit and, in the next block, continued to accelerate until he applied his brakes. Testimony to that effect, given by a

disinterested eyewitness, was strengthened by the physical evidence showing the force of the impact and its aftermath. In the process of attaining that speed, Mayo passed two cars, moved from the right to the left lane, turned back into the right lane, and then returned partly to the left lane. Manifestly, such erratic maneuvers at such a high speed distracted his lookout and impaired his control over his car.* .

We are of the opinion that such conduct in such a residential subdivision constituted reckless driving "so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury", and we hold that the evidence was sufficient to support the trial court's finding that defendant was guilty of felonious negligence which was the proximate cause of the fatality.

Finding no error below, we will affirm the judgment.

*Affirmed.*

CARRICO and HARRISON, J.J., dissenting.
No dissenting opinions.

---

* Compare the circumstances here with those in *Delawder* v. *Commonwealth, supra,* where we affirmed a conviction of involuntary manslaughter.