COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Athey and Callins
Argued at Lexington, Virginia


JACOB THOMAS SNEAD

                               MEMORANDUM OPINION[*] BY
v.       Record No. 0044-22-3        JUDGE CLIFFORD L. ATHEY, JR.
                                     MARCH 7, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The Circuit Court of Pittsylvania County ("trial court") convicted Jacob Thomas Snead

("Snead") of aggravated involuntary manslaughter in connection with a motor vehicle accident that

resulted in the death of his passenger, Daniel Adams ("Adams"). Snead contests the sufficiency of

the evidence supporting his conviction. He also assigns error to the admission of his hospital

records which included his blood alcohol test results as well as the admission of the expert

testimony of a toxicologist based on those results. Finding no error, we affirm the trial court.

I. Background

On the night of January 30, 2021, Snead consumed several twelve-ounce beers. At

approximately 2:25 a.m., Snead failed to recognize a curve in the road, continued straight, struck

two road signs, careened down an embankment, and crashed into a tree. Within "two minutes,"

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Ryan Allen ("Allen") and Amber Conard ("Conard"), a couple who lived nearby, heard the crash and ran to Snead's vehicle where they found Snead and Adams unconscious inside the vehicle. Conard called 911.

Trooper W. McCraw ("McCraw") arrived at 2:53 a.m. and attempted to question Snead and Adams. They were still inside the car and unable to respond. Adams was subsequently declared dead at the scene of the accident by emergency personnel, and Snead was transported to the local hospital for treatment. At trial, McCraw testified that the grassy shoulder of the road near the crash bore a light coating of snow. He also photographed and measured the tire tracks in the grass from the edge of the road to the crash site and testified that the tire tracks began just as the road curved left and continued straight for 220 feet to the crash site. He also found two damaged road signs along the path of the tire tracks, the first of which was a VDOT yellow marker signaling the oncoming curve. He found the first sign approximately 171 feet from where the car left the road, and another 27 feet later he found the second sign. McCraw further observed that no snow accumulation was on the road near the crash but there was "a crusty slush on it," forcing him to drive to the scene "at a reduced speed."

Snead arrived at the emergency room at approximately 4:32 a.m. Emergency room personnel performed a blood test, and Snead's "serum" blood alcohol concentration ("BAC") was .20 %. Several hours later, Snead submitted to a urinalysis and tested positive for amphetamines and benzodiazepine.

McCraw testified that Snead's last memory prior to the accident was being at Adams's house at midnight but that Snead did remember consuming "four to five twelve-ounce Bud Light beers" before he drove to Adams's house at 10:30 p.m. Snead also remembered having taken his prescription medication, buprenorphine that day as well.

Dr. Wright, a forensic toxicologist, testified that when she converted Snead's "serum" blood alcohol test results to "whole blood" alcohol results,[1] Snead's "whole blood" BAC was between 0.16 and 0.18 at the time of testing. Dr. Wright also opined that Snead's "whole blood" BAC at the time of the accident was 0.2. She testified that a 0.2 BAC level would negatively impact Snead's ability to drive by interfering with "the critical judgment . . . and . . . the motor skills . . . needed to react to different stimuli[,] . . . stay into [sic] the lanes or react to the speed and the distance between objects." Dr. Wright also noted that, "at night, visual acuity m[ight] become an issue."[2]

The trial court subsequently reasoned that Snead "chose to drive a vehicle after consuming alcohol in poor [weather] conditions" and that the "slushy" road conditions and poor visibility from falling snow required extra care, as demonstrated by McCraw's reduced speed en route to the scene. The trial court also determined that based on the tire tracks and the collision with the two road signs, Snead drove "straight," with "no braking [and] no indication that [he] tried to stop the vehicle." Moreover, the trial court found the extensive damage to the front end of the car indicated that Snead was not "going very slow" when he struck the tree. The trial court expressly excluded consideration of the positive urinalysis indicating drug use, but did find that, even excluding those drugs and, assuming Snead's BAC was at the lower end of Dr. Wright's estimate, Snead acted with a "gross wanton culpable disregard for human life" when he decided to drive in an impaired condition because "a sober person would have gone slower." The trial court also specifically found that the blood test results were reliable, stressing that Snead's

---

[1] Dr. Wright explained that "serum has a higher water concentration compared to whole blood" and that "the serum concentration [measures] ten to twenty percent higher alcohol concentration compared to whole blood[.]"

[2] Dr. Wright agreed that a drug administered to Snead by the hospital could have been responsible for the presence of the benzodiazepine. Dr. Wright did not opine regarding the possible source of the amphetamines.

physicians relied on them to treat him. Accordingly, the trial court found Snead guilty of aggravated involuntary manslaughter. Snead appeals.

## II. ANALYSIS

### A. *Standard of Review*

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "Whether the foundation is sufficient to properly establish the chain of custody is a question within the sound discretion of the trial court." *Anderson v. Commonwealth*, 274 Va. 469, 479 (2007). "[T]he admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion." *Midgette v. Commonwealth*, 69 Va. App. 362, 375 (2018) (alteration in original).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

- 4 -

B. *The blood alcohol test results and expert opinion were admissible.*

1. The blood alcohol test results were admissible.

Snead argues that the trial court abused its discretion by admitting the blood alcohol results contained in his hospital records because there was insufficient evidence presented on the chain of custody of the blood test and therefore the evidence was unreliable. We disagree.

"Although the Commonwealth is required to demonstrate evidence supporting every 'vital link in the chain of custody' when introducing the results of chemical analysis of physical evidence items, 'the burden is not absolute that "all possibility of tampering" be eliminated.'" *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012) (quoting *Robinson v.* Commonwealth, 212 Va. 136, 138 (1971)). "Moreover, '[a]ll that is required . . . to establish a chain of custody is that the Commonwealth's evidence "afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained."'" *Id.* (alterations in original) (quoting *Pope v. Commonwealth*, 234 Va. 114, 121 (1987)). "Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence." *Brown v. Commonwealth*, 21 Va. App. 552, 556 (1996) (quoting *Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990)).

Here, the trial court found that the blood test results were reliable, noting that Snead's health care providers had relied on them to treat him. As the United States Court of Appeals for the Fourth Circuit has recognized, "[t]here is good reason to treat a hospital record entry as trustworthy." *Thomas v. Hogan*, 308 F.2d 355, 361 (4th Cir. 1962). The court stressed that "[h]uman life will often depend on the accuracy of the entry," and held that "it is reasonable to presume that a hospital is staffed with personnel who competently perform their day-to-day

tasks." *Id.* Accordingly, the court held that "hospital records are deserving of a presumption of accuracy even more than other types of business entries."[3] *Id.*

The trial court did not abuse its discretion by admitting Snead's blood test results and hospital records without further chain of custody foundation.[4] This finding is consistent with our ruling in *Stevens v. Commonwealth*, 46 Va. App. 234, 246 (2005), where Stevens similarly argued that though the rule against hearsay did not bar admission of a hospital toxicology report, the Commonwealth had laid insufficient foundation for its admission. There we concluded that the lower court had not abused its discretion in evaluating the sufficiency of the foundation. *Id.*

2. Dr. Wright's opinion testimony was admissible.

Snead next contends that Dr. Wright's opinion was too speculative to be admissible because the blood test results were unreliable due to the lack of chain of custody evidence. We disagree.

To be admissible, "expert testimony must be based on an adequate foundation" and is "inadmissible if it is founded on assumptions that have an insufficient factual basis." *Payne v. Commonwealth*, 277 Va. 531, 542-43 (2009) (quoting *Keesee v. Donigan*, 259 Va. 157, 161

---

[3] Although unpublished decisions are not binding authority, we reached a similar conclusion in *Smith v. Commonwealth*, No. 2332-98-2, slip op. at 5, 2000 WL 225905, at *2 (Va. Ct. App. Feb. 29, 2000) (holding that "reliance upon the hospital records for the treatment and care of patients is manifest," thus allowing admissibility "under the modern Shopbook Rule exception to hearsay" without chain of custody evidence). "[[M]edical records] of a properly operated [hospital] must be accurately and properly kept by the [treating doctors and nurses], or else the lives . . . of its [patients] . . . are . . . imperiled." *Parker v. Commonwealth*, 41 Va. App. 643, 655-56 (2003) (all but second alteration in original) (quoting *French v. Virginian Ry.*, 121 Va. 383, 386-87 (1917)).

[4] To the extent that Snead asserts the trial court erred by admitting evidence he had drugs in his system, any error in the admission of the drug evidence was harmless because the trial court expressly stated it did not rely on that evidence. "'If, when all is said and done,' the reviewing court is 'sure that the [non-constitutional] error did not influence the [fact finder], or had but slight effect, the verdict and the judgment should stand.'" *Smith v. Commonwealth*, 72 Va. App. 523, 543 (2020) (first alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)).

(2000)).  "Expert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible."  *Lawrence v. Commonwealth*, 279 Va. 490, 498 (2010) (quoting *Vasquez v. Mabini*, 269 Va. 155, 160 (2005)).  By the same token, challenges to an expert's conclusions based on "weaknesses in h[er] testimony" do not render the opinion inadmissible; rather, they go to the "weight to be given the evidence," raising factual questions to be determined by the jury.  *Tarmac Mid-Atlantic, Inc. v. Smiley Block Co.*, 250 Va. 161, 167 (1995).

As discussed above, the blood tests upon which Dr. Wright's opinion rested were properly admitted into evidence.  Thus, to the extent Snead argues that Dr. Wright's opinion testimony was inadmissible based on chain of custody concerns, those challenges go to the weight of her opinion, not its admissibility.  *Brown*, 21 Va. App. at 556.  Snead attempted to impeach Dr. Wright's opinion on this basis when he questioned both Dr. Wright and the custodian of the hospital records about their lack of knowledge on chain of custody issues, but he produced no evidence suggesting that the analysis of the BAC in his blood samples was flawed or that any drugs he received altered his BAC readings.  Dr. Wright's opinion was based on assumptions that were either supported by the evidence or uncontested.  Therefore, the trial court did not abuse its discretion by admitting Dr. Wright's opinion testimony.

C. *The evidence was sufficient to support Snead's conviction.*

Snead finally contends that the evidence was insufficient to support his conviction for aggravated involuntary manslaughter.  He asserts that the evidence failed to prove that he drove an automobile while intoxicated because his blood alcohol test results were unreliable without a proper chain of custody foundation.  As he does in his evidentiary argument, Snead challenges the credibility of Dr. Wright's opinion on chain of custody grounds, contending she was

"force[d]" to give her opinion "without the benefit of proper foundational evidence."[5] He emphasizes that, aside from his elevated BAC, the record did not establish that his operation of the motor vehicle was impaired by alcohol. Snead stresses that no evidence established that the weather or road conditions were dangerous when he decided to operate his vehicle; citing *Powers v. Commonwealth*, 211 Va. 386 (1970), he asserts that the evidence proved only that he had an accident on a curve where several other drivers had also lost control of their vehicles. We disagree.

Snead was convicted of aggravated involuntary manslaughter in violation of Code § 18.2-36.1(B). Code § 18.2-36.1 states in pertinent part:

> A. Any person who, as a result of driving under the influence in violation of . . . § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter . . . .

To prove aggravated involuntary manslaughter under the statute, the evidence had to prove that: (a) Snead drove while intoxicated, (b) that, as a result of driving while intoxicated, he caused the death of another, and (c) that his conduct was "so gross, wanton and culpable as to show a reckless disregard for human life." *Id.*

---

[5] Snead also suggests that the trial court erred by relying on Dr. Wright's opinion on intoxication because she agreed that "part of the problem in this case . . . is . . . that you have to make a lot of assumptions." But the quotation is taken out of context. During cross-examination, Snead supplied Dr. Wright with alternative hypothetical facts, and when Dr. Wright sought clarification, Snead commented, "[s]o . . . that's part of the problem in this case because you have to make a lot of assumptions." Dr. Wright agreed and reiterated that her opinion was based on the facts that she had been supplied.

- 8 -

1. <u>There was sufficient evidence of Snead's intoxication.</u>

The evidence demonstrated that Snead was intoxicated at the time of the accident with a "high" BAC of approximately 0.2. Dr. Wright's testimony and his BAC supported a rational inference that he consumed a significant number of alcoholic beverages before driving. No evidence indicated that Snead consumed any alcohol after the accident. Indeed, he was unconscious when Allen and Conard found him "two minutes" after the accident, and they remained with him until emergency personnel arrived.

Although Snead speculates that his BAC test could have been compromised by the drugs administered to him after the accident, he cites no evidence supporting that theory. The Commonwealth must exclude "every *reasonable* hypothesis of innocence, that is, those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'" *Tyler v. Commonwealth*, 254 Va. 162, 166 (1997) (quoting *Turner v. Commonwealth*, 218 Va. 141, 148 (1977)). The Commonwealth need not "negate what 'could have been' or what was a 'possibility.'" *Nelson v. Commonwealth*, 281 Va. 212, 218 (2011).

Here, the trial court was entitled to rely on the blood alcohol tests performed as part of Snead's medical care, as well as Dr. Wright's calculation of his BAC at the time of accident. Snead did not challenge Dr. Wright's expertise in toxicology and offered no competing opinion evidence. "Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "Where credibility issues are resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). "[T]his [C]ourt will not seek to pass upon the credibility of the witnesses where their [testimony]

is not inherently incredible." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (first and second alterations in original) (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)). This deference applies to testimony from expert as well as lay witnesses. *See Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (holding that credibility of expert witness is up to the fact finder); *Grattan v. Commonwealth*, 278 Va. 602, 617 (2009) (holding that fact finder determines the credibility of an expert witness's testimony and its "probative value").

Hence, based on Snead's BAC test results and Dr. Wright's expert opinion that Snead's BAC was 0.2 when the accident occurred, the evidence supported the trier of fact's rational conclusion that Snead was intoxicated at the time of the accident. Accordingly, the trial court did not err in finding that the evidence was sufficient to prove Snead's intoxication beyond a reasonable doubt.

### 2. There was sufficient evidence of causation.

The record also supported the trial court's finding that Snead's alcohol-intoxicated driving caused Adams's death. The tire tracks in the snow demonstrated that Snead made no attempt to correct his path or brake after leaving the road, despite the presence of a road sign marking the curve. Based on the extensive damage to the front of the car and the straight path from the road to the tree, the evidence supported the trial court's finding that Snead drove directly into the tree at a high rate of speed. Dr. Wright testified that a BAC of 0.2 would interfere with a driver's "judgment" and reaction time as well as his ability to judge speed and his ability to stay in his lane of travel. Accordingly, the record was sufficient to prove beyond a reasonable doubt that, "as a result of driving under the influence [of alcohol]," Snead caused Adams's death. Code § 18.2-36.1.

### 3. There was sufficient evidence of criminal negligence.

The evidence was also sufficient to prove beyond a reasonable doubt that Snead was criminally negligent. "[C]riminal negligence involve[s] conduct 'so gross, wanton, and culpable as to show a reckless disregard of human life.'" *Brown v. Commonwealth*, 278 Va. 523, 528 (2009) (quoting *Greenway v. Commonwealth*, 254 Va. 147, 154 (1997)). "[T]he requisite mens rea 'may be found to exist when the defendant either knew or should have known the probable results of his acts.'" *Commonwealth v. Cady*, 300 Va. 325, 328 (2021) (quoting *Noakes v. Commonwealth*, 280 Va. 338, 346 (2010)).

"Determining 'the degree of the hazard posed' by [a] defendant's driving . . . heavily 'depends upon the circumstances in each case.'" *Id*. at 329 (quoting *Mayo v. Commonwealth*, 218 Va. 644, 648 (1977)). "[A]lcohol consumed by an automobile driver, even though not enough to cause legal intoxication, may be sufficient to impair his capacity to perceive the dangers with . . . clarity, make the decisions with the prudence, and operate the vehicle with the skill and caution required by the law." *Stover v. Commonwealth*, 31 Va. App. 225, 231-32 (1999) (alterations in original) (quoting S*imon v. Commonwealth*, 220 Va. 412, 419-20 (1979)). "[T]he debilitating effect of alcohol becomes 'an aggravating factor, increasing with its degree, bearing upon the relative culpability of the defendant's conduct' in determining both the measure of negligence and the 'appropriate quantum of punishment.'" *Id.* at 232 (quoting *Essex v. Commonwealth*, 228 Va. 273, 283 (1984)).

"Criminal negligence is judged according to an objective standard[.]" *Brown*, 278 Va. at 528. "Generally, negligence . . . [is a] factual finding[ ]," and thus an issue for a trier of fact to resolve; it only becomes a question of law "'when reasonable minds could not differ.'" *Levenson v. Commonwealth*, 68 Va. App. 255, 258 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 655 (2015)). Such factual findings "are not to be disturbed unless they are

plainly wrong or are without evidence to support them." *Id.* at 259 (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

This Court has held that driving with a BAC of more than 0.25, standing alone, constitutes "a willful act" sufficiently "gross, wanton, and culpable" to prove a violation of Code § 18.2-36.1(B). *Camp v. Commonwealth*, 68 Va. App. 694, 703-06 (2018). Here, we do not decide whether driving with a BAC of 0.2 is sufficient, standing alone, to establish the "gross, wanton, and culpable" conduct required to prove aggravated involuntary manslaughter. However, we do find here, that viewed in the light most favorable to the Commonwealth, the BAC evidence proved that Snead's level of intoxication was two and one-half times the legal limit, and therefore Snead was substantially impaired by alcohol. The evidence also supported the trial court's finding that as a result of the level of intoxication Snead did not conform his driving to the weather and road conditions. The evidence proved that, while he was extremely intoxicated, Snead chose to drive a curvy, dangerous road when the road and visibility conditions were poor. He failed to heed the road signs marking the curve, and instead, drove straight off the road at a high rate of speed directly into a tree. Viewed as a whole and in combination, the circumstances here were sufficient to support the reasonable conclusion that Snead was criminally negligent when he chose to transport Adams down a treacherous stretch of road when the road conditions were deteriorating, all while his intellectual and motor skills were substantially impaired by alcohol. Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that Snead was guilty of aggravated involuntary manslaughter.

### III. CONCLUSION

Finding no error, the trial court's judgment is affirmed.

*Affirmed.*