COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Beales and Raphael
Argued at Norfolk, Virginia

CHARLES ROBERT NICHOLSON, III

v.        Record No. 1431-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE MARLA GRAFF DECKER
DECEMBER 28, 2023

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Charles Robert Nicholson, III, appeals his conviction for involuntary manslaughter in

violation of Code § 18.2-36.[1]  He contends that the trial court erred in finding the evidence

sufficient to support his conviction.  For the following reasons, we affirm the judgment.

BACKGROUND[2]

On the morning of Saturday, November 2, 2019, Mary Fulcher went to a hair salon in a

shopping center located on Providence Road in Virginia Beach, as she did every week.  While there,

Fulcher seemed alert as she engaged in normal conversation with her hairdresser.  After the hair

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court also convicted the appellant of reckless driving due to excessive speed in
violation of Code § 46.2-862.  That conviction is not before the Court on appeal.

[2] In accordance with familiar principles of appellate review, we state the facts, and all
reasonable inferences "fairly deducible" from those facts, in the light most favorable to the
Commonwealth, the prevailing party at trial.  *Lambert v. Commonwealth*, 298 Va. 510, 515
(2020).

appointment, Fulcher drove her vehicle through the parking lot toward Providence Road, a four-lane road that ran roughly east and west in that area. She stopped at a stop sign and waited for traffic to clear. A minute or so later, her hairdresser heard what sounded like a loud explosion. She subsequently learned that Fulcher had been involved in a fatal car wreck. The accident occurred when the appellant's car, a blue Dodge Challenger, hit Fulcher's car as she pulled out into the right eastbound lane on Providence Road from the parking lot located to the south.

The Challenger was traveling eighty miles per hour just a second before the accident, which was twice the posted speed limit of forty miles per hour. The place where the accident occurred was adjacent to the shopping center, across the street from a church and an apartment building, and down the street from a residential area. Sidewalks lined both sides of the street, which was divided by a concrete median. At least six points of ingress and egress provided access to Providence Road from the adjacent properties in that area. South Military Highway, which ran roughly north and south in that area, intersected Providence Road just to the west of the block in which the accident occurred. The shopping center was located at the southeast corner of that intersection.

At the appellant's bench trial, the Commonwealth presented evidence from a number of eyewitnesses. Randy Weatherspoon saw the appellant shortly before the accident as the appellant left a bank on foot and got into the blue Challenger. The bank was in the western portion of the same shopping center in which Fulcher's hair salon was located. Both the appellant and Weatherspoon pulled their cars out of the parking lot on the west end heading north on South Military Highway. When the traffic light at South Military Highway and Providence Road turned green, Weatherspoon "heard and saw" the Challenger turn east onto Providence Road at "full throttle."

John Schwaebler also saw and heard the appellant's vehicle at that time. Schwaebler had been a road-course racer for twenty years and drove for the Porsche racing team. While stopped

with westbound traffic on Providence Road at its intersection with South Military Highway, Schwaebler noticed the blue Dodge Challenger turn onto Providence Road heading east. The driver of the Challenger, later identified as the appellant, "went racing off down Providence around [a] bend" in the road. Schwaebler lost sight of the Challenger as it rounded the bend. Nonetheless, he could hear the car as the appellant "hit the rev limiter a couple of times" and "slammed [into] third gear." Immediately after that, Schwaebler heard the crash. He opined that "in that car, [at] third gear, [the appellant] had to be [driving] seventy-five [miles per hour] plus, and he wasn't slowing [down]."

Schwaebler's passenger, driving instructor Chris Stanley, also saw and heard the Challenger. According to Stanley, after the car turned onto Providence Road, the driver of the Challenger accelerated and he "heard what sounded like . . . the engine . . . at full RPM."

Also driving east on Providence Road at the time was a caravan of three vehicles that were transporting food from a food bank to their church. Charlie Scott, the driver of the first vehicle in the caravan, was traveling forty miles per hour. In his rearview mirror, he carefully watched the other two vehicles behind him, a van and a truck, to "make sure nothing happen[ed]" to them or their cargo. Scott noticed Fulcher stopped at the stop sign in the parking lot as he drove past her. The other two vehicles in his caravan were a short distance behind him, traveling more slowly, and no other cars were between them. Soon after Scott passed Fulcher's stopped vehicle, Fulcher pulled out of the parking lot onto Providence Road behind him. Suddenly, he heard a loud "bang." In his rearview mirror, Scott saw Fulcher's car spinning and noticed that a blue Challenger was right behind the truck Scott was driving. The Challenger had been "nowhere in sight" as Fulcher exited the parking lot, and Scott "didn't know where it came from." Scott called 911 and then ran to

Fulcher's car.[3]  He later saw the appellant standing on the side of the road "tore up" and crying.  The appellant told Scott, "I couldn't stop."

Alexander Platt was driving the third and last of the vehicles in the caravan returning from the food bank.  Immediately prior to the accident, he was traveling about thirty miles per hour in the right lane on Providence Road.  The first of the vehicles in his caravan, driven by Charlie Scott, was "out of sight" in front of him, and he noticed the appellant's vehicle driving behind him in the right lane.  The appellant then "floored it" and moved into the left lane in an effort to pass Platt's truck.  According to Platt, the appellant sped past him and the van in front of him before maneuvering back toward the right lane.  At that point, the Challenger hit Fulcher's car as she pulled out of the parking lot.

Officer Kevin Stephenson, of the Virginia Beach Police Department, arrived at the scene of the wreck and saw the Challenger stopped in the right lane, with part of the car situated in the road and the other part on the curb.  The front of Fulcher's car was "extremely damaged," and "the engine was on the ground."  Paramedics treated Fulcher at the scene, and Officer Stephenson spoke with the appellant.  The appellant told Stephenson that he was in the left lane and saw Fulcher in the shopping center parking lot.  He said that he was "so close" and "thought she was stopped."  He added that she pulled out of the shopping center and "[i]t happened so fast" that he did not have time to stop.

Virginia Beach Police Officer John Dolida, a member of the department's fatal crash team, also spoke with the appellant shortly after the crash.  He told Officer Dolida that he lived about a block from where the crash occurred and that he was very familiar with the area.  The appellant, a diesel technician at an automobile dealership, admitted he was not wearing his seatbelt at the time of

---

[3] Fulcher later died due to blunt force trauma from the impact that occurred when the Challenger crashed into the driver's side of her car.

the crash. He told Dolida he was "familiar with driving [the Challenger]" and that it did not have any faulty equipment. He also told the officer that he was driving only forty to forty-five miles per hour immediately before the accident. The appellant said that after the accident, he got out of the car, smoked a cigarette, and then called 911.

Dolida later recovered the event data recorders from both vehicles. As part of his investigation, he measured 442 feet between where Fulcher and the appellant could have first seen each other before impact if their views had been unobstructed. At trial, Officer Dolida opined that it would take 4.02 seconds to travel 442 feet at seventy-five miles per hour but 7.53 seconds to travel that distance at forty miles per hour, the posted speed limit.

Virginia Beach Police Sergeant Terrence Schultz testified as an expert in crash data analysis. He explained that the data recorder from the Challenger indicated that five seconds prior to impact, the car began to accelerate from sixty-four miles per hour and was traveling at eighty miles per hour just 1.1 seconds before the crash. Schultz further opined based on the data that the appellant struck Fulcher's car while traveling seventy-seven miles per hour. The appellant's steering wheel remained straight at the time of impact, and he did not hit the brakes until 0.2 seconds before the crash.

After the Commonwealth rested its case, the appellant moved to strike the evidence. He argued that the evidence failed to prove his actions were so gross, wanton, and willful as to show a reckless disregard for human life, and he contended that this case was "about speed and speed alone." The appellant additionally argued that Fulcher's act of pulling out of the parking lot into the road just before impact was an intervening cause that relieved him of criminal responsibility. The trial court denied the motion to strike.

Following closing arguments, the court convicted the appellant of involuntary manslaughter. It made a number of factual findings recognizing key pieces of evidence. First, the court found that

the appellant was traveling seventy-seven miles per hour in a forty-mile-per-hour zone at the time of impact. It further indicated that he was accelerating just before impact, from sixty-four to eighty miles per hour. The court noted that the appellant was aware of the physical characteristics of the area and knew of the "multiple curb cuts and businesses and activity" along the street. It also recognized the appellant knew about the presence of the specific relevant curve in the road and was aware of other traffic around him. The court considered the absence of evidence that the appellant tried to turn to avoid the accident and the fact that he did not attempt to brake until less than a second before the collision. It concluded that it was "reasonably foreseeable" that cars would be entering the main road and "likely that others could be impaired by [the appellant's] actions." As a result, the court held that the appellant "knew or should have known these consequences" of his actions. The appellant was sentenced to three years in prison for his involuntary manslaughter conviction, with all but twelve months of that sentence suspended.

ANALYSIS

The appellant challenges the sufficiency of the evidence supporting his conviction on two grounds. He argues that the evidence of his negligence "did not rise to a level of gross and wanton culpability to show a reckless disregard for human life." He further suggests that the victim committed an intervening act of negligence that precluded his conviction.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). In such cases, the reviewing court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "Rather, the relevant question is whether '*any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams*, 278 Va. at 193). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brown v. Commonwealth*, 68 Va. App. 44, 55 (2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

The Supreme Court of Virginia "has defined 'the common law crime of involuntary manslaughter as "the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act."'" *Brown*, 68 Va. App. at 51 (quoting *Noakes v. Commonwealth*, 280 Va. 338, 345 (2010)). In motor vehicle cases, the Supreme Court has more specifically defined involuntary manslaughter as "an accidental killing that is proximately caused by criminal negligence involving conduct 'so gross, wanton, and culpable as to show a reckless disregard of human life.'" *Brown v. Commonwealth*, 278 Va. 523, 528 (2009) (quoting *Greenway v. Commonwealth*, 254 Va. 147, 154 (1997)); *see Cady*, 300 Va. at 327-28.

Criminal negligence is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Kin Yiu Cheung v. Commonwealth*, 63 Va. App. 1, 8-9 (2014) (emphasis omitted) (quoting *Conrad v. Commonwealth*, 31 Va. App. 113, 122 (1999) (en banc)); *see Brown*, 278 Va. at 528-29. This form of negligence must be "more than mere inadvertence or misadventure. It is a recklessness or

- 7 -

indifference incompatible with a proper regard for human life." *Banks v. Commonwealth*, 41 Va. App. 539, 546 (2003) (quoting *Bell v. Commonwealth*, 170 Va. 597, 611 (1938)). When it serves as the basis for involuntary manslaughter, it is judged under an objective standard and, therefore, "may be found to exist when the [offender] either knew or should have known the probable results of his acts." *Cady*, 300 Va. at 328 (quoting *Noakes*, 280 Va. at 346 (alteration omitted)); *see Conrad*, 31 Va. App. at 121-22.

Here, the evidence showed that on the morning of the wreck, the appellant turned onto Providence Road at "full throttle" and "hit the rev limiter" of his Dodge Challenger sports car until he reached third gear. To Schwaebler, a veteran road-course racer, this meant that he had to be driving at least seventy-five miles per hour as he raced down the road and around a bend. Rounding that bend, the appellant rapidly approached Platt's truck in the righthand lane before accelerating again and moving around Platt to the left to pass the truck. He sped up and passed both the truck and the van in front of it, reaching a speed of eighty miles per hour in a forty-mile-per-hour zone. The appellant then attempted to change lanes a second time and collided, at a speed of seventy-seven miles per hour, with Fulcher's vehicle as she exited the shopping center parking lot during business hours. Seconds before the collision, Scott saw Fulcher pull onto the road. At that time, the appellant's car "was nowhere in sight" and Scott "didn't know where it came from." According to Officer Dolida, the appellant's high rate of speed afforded him, at most, only just over four seconds to react to the presence of Fulcher's car in the road in front of him. According to Sergeant Schultz, no evidence indicated that the appellant adjusted his steering to avoid the collision and the appellant did not apply his brakes until 0.2 seconds before impact.

Contrary to the appellant's suggestion, we need not decide whether his excessive speed alone is sufficient to establish the "gross, wanton, and culpable" conduct required to prove involuntary manslaughter. *See Brown*, 278 Va. at 528 (quoting *Greenway*, 254 Va. at 154). "[T]he

cumulative effect of a series of connected[] or independent negligent acts causing a death may be considered in determining if a defendant has exhibited a reckless disregard for human life." *Kin Yiu Cheung*, 63 Va. App. at 9 (quoting *Stover v. Commonwealth*, 31 Va. App. 225, 231 (1999)); *see Cady*, 300 Va. at 329 (holding that evaluating whether a defendant's driving behavior resulting in death constituted involuntary manslaughter required an examination of all the circumstances to determine "the degree of the hazard posed" (quoting *Mayo v. Commonwealth*, 218 Va. 644, 648 (1977))). This case implicates far more than just the speed of the appellant's vehicle.

The law is clear that the "felony of involuntary manslaughter" is distinguishable from cases involving reckless driving by excessive speed due to the additional factor of "the likelihood of injury to other users of the highways." *Mayo*, 218 Va. at 648. In *Mayo*, the victim was waiting in the left-hand turn lane at an intersection "located in a residential community where the speed limit was posted at 35 m. p. h." *Id.* at 645. Before turning, she noticed a "light-colored" car about a block away. *Id.* Thinking the roadway was clear, the victim started to turn left when she was suddenly struck by an unseen vehicle. *Id.* at 645-46. That vehicle had pulled out from behind the light-colored car, increased its speed to more than sixty-five miles per hour, and struck her car. *Id.* at 646. The victim later died at the hospital. *Id.* Mayo, the driver, was convicted of involuntary manslaughter. *Id.* at 645. He argued on appeal that "the most the evidence showed was that he exceeded the speed limit" and, therefore, the evidence failed to prove his actions constituted "felonious negligence." *Id.* at 648. The Supreme Court of Virginia disagreed and found that the "degree of the hazard posed by a speeding automobile depends upon the circumstances in each case." *Id.* The Court observed that the street on which the accident occurred "was not an open highway in a rural area; it was a city street bordered by sidewalks in a residential community . . . commonly used by pedestrians of all ages." *Id.* It also noted that traffic was "customarily heavy at certain hours of the day." *Id.* In affirming Mayo's conviction for involuntary manslaughter, the

Court concluded that Mayo was "on notice that other motorists m[ight] be entering the street from private driveways, that motorists ahead of him m[ight] be changing lanes, that other motorists m[ight] be crossing or turning at intersections, and that his own view of conditions ahead m[ight] be obscured by traffic around him." *Id.*

In the instant case, the facts are even more compelling than in *Mayo*. Here, the evidence proved that the appellant drove his Challenger at a very high rate of speed, over a short period of time, while repeatedly changing lanes on a city street bordered by sidewalks in a mixed residential and commercial neighborhood. Located along the road were an apartment complex, a church, and local businesses, and traffic was moderate at the time of the wreck. The appellant was extremely familiar with the area, as he lived only about a block from the crash scene. He was an automotive technician who was familiar with the high-performance Challenger sports car. According to the appellant, the car was in good working order at the time of the crash. A reasonable fact finder could conclude from this evidence that the appellant was aware of the danger his erratic driving at excessive speeds posed to the general public on and around the well-traveled roadway. The degree of likelihood of injury was underscored by the number of witnesses who were on the road at the time of the crash. And in point of fact, the "degree of hazard" his driving posed to the public resulted in Fulcher's tragic death. *See id.*

Like in *Mayo*, 218 Va. at 649, the appellant's erratic maneuvers at such a high rate of speed well over the speed limit clearly impaired his ability to see Fulcher in time to react and dangerously limited his control over the Challenger. As the trial court found, it was reasonably foreseeable that cars would be exiting any of the area businesses at that time, making it more likely than not that other drivers would be harmed by his actions. The evidence proved that if the appellant had been traveling around the curve at the speed limit with an unobstructed view, he would have had more than seven seconds to take evasive action by swerving, braking, or both. Due to his excessive

speed, that reaction time was reduced to four seconds. And because he chose to pass the truck and the van at the same time at that speed in that location from around a curve, he did not see Fulcher's car enter the right lane of Providence Road until a split second before the crash. As a result, he did not adjust his steering or have time to effectively apply his brakes.

Based on the totality of the circumstances, we hold that a rational factfinder could conclude that the appellant's conduct was so willful or wanton as to demonstrate "a reckless or indifferent disregard" for Fulcher's safety, under circumstances making it "not improbable that injury w[ould] be occasioned," and that the appellant knew or should have known "the probable result of his acts." *See Brown*, 278 Va. at 528-29 (quoting *Riley v. Commonwealth*, 277 Va. 467, 484 (2009)).

The appellant's second argument—that Fulcher committed an intervening act of negligence precluding his conviction—is also unavailing on the facts of this case. We assume without deciding that Fulcher's act of pulling out into the street from a complete stop could be considered a separate act of negligence. Even so, except for "the reckless circumstances under which" the appellant was operating his vehicle, he would have foreseen the likelihood that someone might enter the roadway in this fashion. *See Delawder v. Commonwealth*, 214 Va. 55, 58 (1973). It is reasonably foreseeable that a driver pulling out of a commercial parking lot during Saturday morning business hours into an adjacent street does so with the expectation that any street traffic will be traveling at around the posted speed limit, not at twice that rate while also changing lanes. And an intervening act that is "reasonabl[y] foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury." *Id.* In order for Fulcher's actions to have relieved the appellant of criminal responsibility for her death, Fulcher's "negligence must have been an independent, intervening act [that] *alone* caus[ed] the fatal injury." *See id.* at 57 (emphasis added) (holding that the victim's act of negligence was not an intervening cause absolving the defendant of liability where *both* were "operating their vehicles 'right together'

- 11 -

around a curve at speeds of" eighty miles per hour). The evidence here simply does not compel such an outcome. Instead, it supports a finding that Fulcher waited at the stop sign for traffic to clear and only then pulled out into the street, believing it was safe to do so based on the posted speed limit in the area and the fact that the appellant was nowhere in her view. At the same time, the appellant was driving in a reckless manner at an excessive speed around a curve, past a truck and a van, in a way that also prohibited him from seeing Fulcher's vehicle in time to avoid the crash. He had no time to brake effectively, nor did he turn his steering wheel to avoid impact. The record does not support the proposition that any degree of fault on Fulcher's part constituted an intervening act of negligence that precluded the appellant's conviction.

Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that the appellant was criminally responsible for causing the wreck that resulted in Fulcher's death.

CONCLUSION

For the foregoing reasons, we conclude that the evidence proved that the appellant was guilty of involuntary manslaughter and affirm the decision of the trial court.

*Affirmed.*