COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Causey
Argued at Alexandria, Virginia

PUBLISHED

JOANA KONADU

v.      Record No. 0178-23-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
JANUARY 30, 2024

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge

Peter M. Baskin (Peter M. Baskin, P.C., on brief), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Sitting without a jury, the Circuit Court of Fairfax County ("trial court") convicted Joana

Konadu ("Konadu") of misdemeanor reckless driving pursuant to Code § 46.2-853 before

sentencing her to twelve months' incarceration and a $2,500 fine. On appeal, Konadu challenges

the sufficiency of the evidence to sustain her conviction. Finding no error, we affirm the trial

court's ruling.

I. BACKGROUND[1]

On the morning of May 20, 2022, members of the Annandale Beautification Committee

walked southbound on the sidewalk along Maple Place—a road in Fairfax County. The pedestrians,

some wearing reflective vests for visibility, were attending mulch beds and performing other

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the
prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)
(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard
the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the
credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."
*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

roadside maintenance. Suddenly, a gray 2008 Nissan Altima—driven by Konadu—crossed from its northbound lane across the median, through a bicycle lane, and into the southbound lane of travel before proceeding onto the curb and colliding with the group of pedestrians. The Altima did not brake after the collision. Instead, it drove on—through a parking lot and sign—until coming to a stop off the side of the southbound lanes.[2] The collision injured four members of the Beautification Committee, one of whom later succumbed to her injuries. Several surveillance cameras captured footage of the accident and its aftermath.

Fairfax County Police Officer Miller ("Officer Miller") responded to the accident and spoke with a "hysterical" Konadu who admitted to being the driver of the Altima. Konadu told Officer Miller that she and her daughter Josephine Osei Bonsu ("Bonsu") were coming from Chick-fil-A and that she lost control of her vehicle when she swerved to avoid a man in the middle of the road.[3]

At trial, Bonsu testified that she and her mother had just picked up Chick-fil-A and were traveling northbound on Maple Place with the food sitting in the passenger footwell. When some of the food spilled onto the floorboard, Bonsu said "[o]h my gosh, the drink spilled."[4] In response, Konadu reached over into the passenger side footwell. Bonsu was looking down at this time and testified that she only saw Konadu's hand.[5] She also testified that she did not feel the vehicle change direction, but eventually heard a "boom."

Fairfax Detective Snyder ("Detective Snyder") testified that she calculated Konadu's speed at 31 to 32 miles per hour—slightly beyond the posted 25 mile-per-hour limit. Detective Snyder

---

[2] One witness described the vehicle as going through a "fence."

[3] No man is visible in the video footage of the incident.

[4] Bonsu told the court that she uttered the statement as a reaction to the spill, but not in an excited manner.

[5] Bonsu testified that her head was down and that she did not see whether Konadu lowered her head.

also determined that Konadu's vehicle traveled approximately 178 feet from its point of contact with the southbound curb to its final resting place, and a total of 280.7 feet from where it initially crossed the center line of the northbound lane.  Detective Snyder did not observe any skid marks at the scene.

After the Commonwealth rested, Konadu moved to strike the evidence based on her contention that the Commonwealth's case lacked proof of "deliberateness."  Konadu further argued that the evidence established only that the accident followed her "spontaneous reaction to the statement[] 'Oh, my God.'"  The trial court denied Konadu's motion and noted that Konadu "had been driving too far while her eyes were not on the road" and was looking "down at the floorboard of the passenger seat."  The trial court ruled that these circumstances were inconsistent with "the momentary split[-]second lack of concentration" following "shocking news" or spilling hot coffee on oneself.

Konadu declined to present evidence and did not renew her motion to strike.  Before ruling, the trial court made several factual findings.  First, it determined that Konadu "turned her attention from the front of the road" and "with her right hand [she] reached over, presumably to help in picking up the spilled food."  The trial court noted that this period of time "was sufficient for her to leave the lane of travel, to cross the oncoming lane . . . to cross a bike lane, to hit the curb," and then to "drive on a sidewalk and strike a number of citizens . . . walking on the sidewalk in the opposite direction."  The trial court also found that Konadu's vehicle traveled a distance of "approximately a football field" and that she "was looking down the entire time" and "when she alighted from the car, she appeared to be surprised that she had struck other people."  Ultimately, the trial court found that Konadu turned her attention from the road "for a lot of time" and that her "voluntary" decision to lean over "to pick up the food that had fallen" was not a "momentary split[-]second failure to keep a look out," but rather a "lengthy and total complete failure to keep a look out."  Accordingly, the trial

court determined that the Commonwealth had proved sufficient mens rea and convicted Konadu of reckless driving. The trial court sentenced Konadu to twelve months' incarceration.

After sentencing, Konadu filed a written motion to set aside the verdict and argued that the trial court improperly based its verdict on factual conclusions "not supported by the evidence." Specifically, she argued that the evidence did not support the trial court's conclusion that she "maintained" a "leaned over position throughout the vehicle[']s erratic, out-of-control course, suggesting a deliberate course of conduct constituting the requisite mens rea."

In a written order, the trial court rejected Konadu's argument that she "irretrievably lost control of her car" after her daughter's "relatively calm" interjection and found that "the die was not cast the moment she looked away in response" to it. Instead, the trial court held that Konadu "had to be looking away from the road for considerably more than a split second while she was leaned over" because she would have "corrected course" if she had been aware of the vehicle's movements. The trial court further noted that at least one member of the "plainly visible" group of pedestrians wore an "attention-grabbing" safety vest. Finally, the trial court noted that Konadu did not brake or attempt to change her course, indicating that Konadu was "driving blind for an unreasonable amount of time." Accordingly, the trial court denied Konadu's motion. Konadu appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.*

(alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The evidence was sufficient to show that Konadu was looking away and distracted for a significant amount of time while the vehicle was out of control.*

Konadu argues that the evidence adduced at trial was insufficient to sustain her conviction for reckless driving because the trial court relied in part on an unproven fact: that she was looking away the entire time the vehicle traveled off course. We disagree.

Pursuant to Code § 46.2-853, "[a] person shall be guilty of reckless driving who drives a vehicle which is not under proper control . . . on any highway in the Commonwealth." *See Voight v. Reber*, 187 Va. 157, 164, 168 (1948) (holding that the driver of a vehicle has a duty to use ordinary care to keep his vehicle under proper control). "The word 'proper' used in the statute . . . is not an absolute but a relative word [and] . . . means 'appropriate' or 'suitable.'" *Id.* at 164.

The record reflects that Konadu's vehicle drifted from its lane, across a safety lane and the other lane of travel, and struck a curb, the victims, and a sign, before stopping almost 300 feet from where it crossed out of its lane. Moreover, the evidence established that Konadu took no evasive actions to avoid the collision and did not seem to realize that she had struck pedestrians once her vehicle had come to a stop. Considering these facts together, the record supports the trial court's finding that Konadu "reached over with her right hand, away from the steering wheel, across her passenger's lap, down toward her passenger's feet" and thus looked down. The record further supports the trial court's finding that Konadu "had to be looking away from the road for

considerably more than a split second while she was leaned over at her passenger's feet." Indeed, Konadu's confusion upon discovering that she had struck pedestrians supports the reasonable conclusion that she remained distracted the entire time her vehicle traveled 280.7 feet over the median.[6] The trier of fact is entitled to "'draw reasonable inferences from basic facts to ultimate facts,' and those inferences cannot be upended on appeal unless we deem them 'so attenuated that they "push into the realm of *non sequitur*."'" *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 (2015)). Here, we see no reason to question the trial court's inferences.

Based on the above, the trial court determined Konadu "was looking down the entire time" while the vehicle was out of control for a distance of "approximately 300 feet." We find that the trial court did not err in reaching this determination.

C. *The trial court did not err in finding sufficient mens rea for reckless driving.*

Konadu further contends that that the evidence failed to establish the mens rea requirement for criminal recklessness. We disagree.

In *Commonwealth v. Cady*, 300 Va. 325 (2021), the Supreme Court noted that under the general reckless driving statute, Code § 46.2-852, "[c]riminal recklessness, the requisite mens rea specified" for reckless driving, "requires a reckless 'disregard by the driver of a motor vehicle for the consequences of his act and an indifference to the safety of life, limb, or property' of others." *Id.* at 327 (quoting *Powers v. Commonwealth*, 211 Va. 386, 388 (1970)). This requires "more than simple negligence, as that concept is used in civil tort cases, but is less than 'gross, wanton, and culpable' negligence" as required to prove felony involuntary manslaughter. *Id.* at 327-28 (quoting *Noakes v. Commonwealth*, 280 Va. 338, 345-46 (2010)). "[T]he requisite mens rea 'may be found

---

[6] The evidence in the record would reflect that—if Konadu were not distracted—she drove across multiple lanes of travel, into a crowd of pedestrians, without taking evasive action, all while fully aware of the impending collision.

to exist when the defendant either knew or should have known the probable results of his acts.'" *Id.* at 328 (quoting *Noakes*, 280 Va. at 346). The "measuring stick" of this determination is "the exercise of due care and caution as represented by the conduct of a reasonable person under like circumstances." *Id.* (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 843 (3d ed. 1982)). Further, "[w]hat distinguishes a speeding violation from the misdemeanor of reckless driving, and the misdemeanor from the felony of involuntary manslaughter, is the likelihood of injury to other users of the highways." *Id.* at 328-29 (alteration in original) (quoting *Mayo v. Commonwealth*, 218 Va. 644, 648 (1977)). "Determining 'the degree of the hazard posed' . . . heavily 'depends upon the circumstances in each case.'" *Id.* at 329 (quoting *Mayo*, 218 Va. at 648).

In *Cady*, the Supreme Court of Virginia recognized criminal recklessness where Cady struck and killed a motorcyclist who had stopped to make a left turn on a clear day. *Id.* at 330.[7] The motorcyclist had his left turn signal on and was "within [Cady's] full, unobstructed view." *Id.* The Supreme Court found that Cady took no evasive action and "was not looking at the road and had not been for some time." *Id.* Konadu asserts that her case is distinguishable from *Cady* because her attention was drawn away by an "unplanned, unexpected event and reaction to it" accomplished without "conscious deliberation and/or predictive behavior." The record does not support her claim.

Viewed in the light most favorable to the Commonwealth, the evidence supports the trial court's ruling. Konadu turned her gaze from the road for long enough for her vehicle to travel across multiples lanes and strike a large visible group of pedestrians on the sidewalk of the opposite lane of travel. Some of these pedestrians wore bright reflective safety vests. Konadu took no evasive action before the collision, continued through a sign, and traveled another 102.7 feet before she brought her vehicle to a stop almost 300 total feet from where she initially left her lane of travel.

---

[7] While *Cady* involved a conviction for reckless driving under Code § 46.2-852, here, Konadu's conviction was under Code § 46.2-853 which imposes the same mens rea for individuals driving vehicles "not under proper control."

Konadu argues that the sequence of events leading to the collision is explainable from her "momentary failure to keep a proper lookout," and thus rises only to the level of simple negligence. She contends that the trial court erred when it based its conclusion on the movements of her vehicle after she lost control of it. Instead, she argues that this Court must focus on "what caused [her] to lose control," and not "upon the damage caused" afterward. To the extent that Konadu argues that steps taken—or not taken—in response to unexpected events cannot be considered by a court in measuring the exercise of due care, we reject this view. Specifically, the trial court explained that this "wasn't an instant where she was suddenly surprised and then the car just started spinning out of control." And thus, the trial court determined that "[t]here were plenty of things that she could have seen, had she been keeping a look out," and "that would have caused her to immediately reverse course" if her lack of concentration had been only momentary. Thus, the record reflects that the trial court did not rely solely upon the trajectory of Konadu's vehicle, but also considered the reason for its unaltered path.

Based on this evidence, a rational trier of fact could reasonably infer that the accident resulted not from a "split-second, momentary failure to keep a lookout," constituting only simple negligence, but rather a "'lengthy, total, and complete' failure to keep a lookout" in violation of Code § 46.2-853. *Cady*, 300 Va. at 330. The totality of these circumstances reflects Konadu's "disregard . . . for the consequences of [her] act[ions]." *Blevins v. Commonwealth*, 63 Va. App. 628, 635 (2014) (quoting *Spencer v. City of Norfolk*, 271 Va. 460, 463 (2006)); *see also Cady*, 300 Va. at 327-29. The trial court had a sufficient basis to conclude that Konadu failed to exercise due care when she chose to concentrate on a non-emergency rather than the road. Therefore, viewed in the light most favorable to the Commonwealth, the record supports the trial court's conclusion that Konadu drove recklessly.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*